GABRIELA LÓPEZ, demandante y recurrida, *v.* ERNEST RO-
DRÍGUEZ, demandado y recurrente.

*Número:* RE-86-519      *Resuelto:* 15 de abril de 1988

*José González González,* abogado del recurrente; *Ramón A. Llovet,* abogado de la recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

El 14 de marzo de 1986 se decretó el divorcio entre Gabriela López y Ernest Rodríguez. Por estipulación de las partes se le adjudicó a la madre, Gabriela López, la custodia de los tres (3) hijos habidos en el matrimonio, de ocho (8), cinco (5) y dos (2) años, respectivamente. La sentencia de

divorcio también dispuso que el padre, Ernest Rodríguez, pagaría una pensión alimenticia de quinientos dólares ($500) quincenales para sus tres (3) hijos. No conforme con la pensión fijada por el tribunal, oportunamente solicitó reconsideración. Ésta fue denegada. De esta determinación recurrió en alzada ante este Tribunal. Denegamos el recurso.

Así las cosas, el 24 de julio de 1986 presentó una moción para solicitar rebaja de pensión alimenticia. Alegó que había sufrido "una reducción drástica en su salario como empleado de la Autoridad de Energía El[é]ctrica, [lo] que le imposibilita[ba]" (*exhibit* II, pág. 3) cumplir con la pensión alimenticia de los menores. El tribunal la señaló para vista conjuntamente con una moción de desacato por pensión atrasada adeudada que había presentado la demandante. El 24 de septiembre de 1986 el tribunal dictó una resolución para rebajar la pensión alimenticia a cuatrocientos dólares ($400) quincenales, retroactiva dicha rebaja al 24 de julio de 1986, encontró al demandado incurso en desacato y ordenó su arresto y encarcelamiento hasta que satisficiera los dos mil seiscientos veinticinco dólares ($2,625) que adeudaba en pensiones atrasadas. De esta resolución el demandado solicitó revisión ante este Tribunal. Ordenamos una exposición narrativa de la prueba y le concedimos un término a la demandante recurrida para presentar su oposición al recurso.(1) Ambas partes han comparecido, y nosotros, estando en posición de resolver, así procedemos a hacerlo sin ulteriores trámites.

En su escrito ante nos el demandado recurrente señala la comisión de cinco (5) errores que pueden resumirse así: que el tribunal de instancia erró al fijar una pensión alimenticia de cuatrocientos dólares ($400) quincenales y al hacer retroactiva la rebaja al 24 de julio de 1986, cuando presentó la

---

(1) Originalmente declaramos sin lugar el recurso de revisión presentado; luego, en reconsideración, lo consideramos como una petición de *certiorari* y ordenamos la exposición narrativa de la prueba para evaluar la reconsideración.

moción de rebaja de pensión alimenticia, y no al 27 de marzo de 1986, cuando solicitó la reconsideración en relación con la sentencia de divorcio donde se fijó originalmente la pensión alimenticia.

I

El demandado recurrente es Ingeniero Mecánico y trabaja en la Autoridad de Energía Eléctrica (en adelante Autoridad). Devenga un salario básico de veintidós mil trescientos dólares ($22,300) anuales. A este salario bruto se le hacen una serie de deducciones.(2) Declaró, además, que antes ganaba una cantidad que fluctuaba entre diez mil ($10,000) a quince mil ($15,000) dólares anuales por concepto de horas extras trabajadas. Aseveró, además, que ahora la política de la Autoridad es que no se trabajen horas extras. Según el demandado recurrente debido a las deducciones salariales, a los gastos adicionales en que ha tenido que incurrir luego de su divorcio,(3) y a que se han reducido las horas extras que trabajaba, se le hace imposible cumplir con la pensión alimenticia de cuatrocientos dólares ($400) quincenales impuesta por el tribunal. Cabe señalar, sin embargo, que la fecha de la carta del supervisor del demandado recurrente, que recomienda la reducción de horas extras a trabajarse, es 7 de febrero de 1987, antes de que se celebrase la vista sobre la pensión alimenticia original.

El demandado recurrente continuó declarando que contrajo nuevas nupcias el 25 de agosto de 1986 y que su actual esposa también trabaja en la Autoridad y devenga un sueldo

---

(2) Aparte de las deducciones comunes de seguro social, aportación al sistema de retiro y contribución sobre ingresos, se le deducen al demandado recurrente ciertas sumas de dinero por concepto de préstamos hechos al retiro de la Autoridad de Energía Eléctrica, a la Cooperativa de Gerenciales y a la Cooperativa de Crédito de la Autoridad de Energía Eléctrica.

(3) Estos gastos son: vivienda, agua, electricidad, teléfono, gastos de alimentos, transportación, ropa y otros.

mensual de ochocientos dólares ($800). Ella paga la mitad de los gastos de la casa.

Del 29 de agosto al 4 de septiembre de 1986, en ocasión de su luna de miel, el demandado estuvo con dos de sus hijos y su segunda esposa en Disney World, Florida. El 4 de septiembre sus hijos regresaron a Puerto Rico. Él y su esposa continuaron el viaje. Estuvieron en Phoenix, Arizona, dos (2) o tres (3) días y en Los Angeles, California, por cuatro (4) o cinco (5) días. Durante el viaje se hospedaron en hoteles y alquilaron carro. Alegó que su actual esposa pagó el viaje y que le costó aproximadamente dos mil dólares ($2,000). No sabe dónde ella consiguió el dinero. De acuerdo con el demandado recurrente, su hermana se comprometió a pagar el pasaje de los niños. Manifestó, además, que posee un Fiat y una motora, y que su actual esposa posee un vehículo Oldsmobile, modelo Cutlass Supreme y un Porsche. Con respecto al Porsche expresó que dió un viaje a Alemania, "en septiembre del año pasado", y lo compró; que dicho vehículo entró a Puerto Rico a su nombre, y que los documentos de compra en Europa también estaban a su nombre. El viaje a Alemania lo pagó con su propio dinero.

## II

Recientemente reiteramos nuestra invariable posición "que los casos relacionados con alimentos de menores están revestidos del más alto interés público". *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987). Esta obligación está consagrada en los Arts. 118, 143 y 153 del Código Civil(4) e incluye "todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica según la posición social de la familia". Art. 142 del Código Civil;(5)

---

(4) 31 L.P.R.A. secs. 466, 562 y 601, respectivamente.

(5) 31 L.P.R.A. sec. 561.

*Guadalupe Viera v. Morell*, 115 D.P.R. 4 (1983); *Negrón Rivera y Bonilla, Ex parte*, supra. Véase, también, la Sec. III, Art. 4 de la Ley Especial de Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986 (8 L.P.R.A. sec. 503).[6] La cuantía en que se fijen los alimentos será proporcional a las necesidades del que las recibe y los recursos del que los da. Art. 146 del Código Civil;[7] Sec. VI, Art. 19 de la Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 518.[8] *Brea v. Pardo*, 113 D.P.R. 217 (1982); *Guadalupe Viera v. Morell*, supra; *Negrón Rivera y Bonilla, Ex parte,* supra. La obligación es indivisible y aplica tanto al padre como a la madre, ambos "tienen, respecto de sus hijos no emancipados, 'el deber de alimentarlos[, tenerlos en su compañía,] educarlos e instruirlos *con arreglo a su fortuna . . .*'". *Vega v. Vega Oliver*, 85 D.P.R. 675, 679 (1962).

El derecho de alimentos que tienen los hijos respecto a sus padres no se extingue con el divorcio de éstos.

---

[6] La Ley Especial de Sustento de Menores tiene como propósito "lograr que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimenticias. Las disposiciones de este Capítulo se interpretarán liberalmente a favor de los mejores intereses del menor o alimentista que necesita alimentos". Sec. III, Art. 3 (8 L.P.R.A. sec. 502).

[7] 31 L.P.R.A. sec. 565.

[8] En su parte pertinente, la Sec. VI, Art. 19 de la Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 518, lee:

"La pensión alimenticia se determinará luego de considerar todos los factores pertinentes, incluyendo: (1) los recursos económicos de los padres y del menor; (2) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales; (3) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta; (4) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y (5) las contribuciones no monetarias de cada padre para el cuidado y bienestar del menor.

"Para la determinación de los recursos económicos del obligado a pagar una pensión alimenticia, se tomará en consideración, en adición al ingreso neto ordinario, el capital o patrimonio total del alimentante."

Art. 108 del Código Civil.(9) Aun después de disuelto el vínculo matrimonial subsiste la obligación de ambos padres de alimentar a sus hijos. Tampoco cesa "cuando, por orden del Tribunal, se haya ubicado al menor en un hogar sustituto o cuando, para propósitos de protección, el menor se encuentra bajo la custodia de otra persona, o de una agencia o institución pública o privada". Sec. III, Art. 4 de la Ley Especial de Sustento de Menores, *supra. Vega v. Vega Oliver,* supra. Entre las obligaciones que están a cargo de la sociedad legal de gananciales, está el "sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges". Art. 1308 del Código Civil, según enmendado.(10) Manresa, comentando el Art. 1.408 del Código Civil español, equivalente al Art. 1308 nuestro, 31 L.P.R.A. sec. 3661, nos dice que:

> *Con arreglo a la ley, incumbe a la sociedad de gananciales la obligación de mantener y educar, no sólo a los hijos comunes, sino también a los legítimos de uno solo de los cónyuges.*
>
> "El que se casa con viudo o viuda —dice Goyena— no puede ignorar si tiene hijos y la obligación que contrae para mante-

---

(9) 31 L.P.R.A. sec. 384.

(10) 31 L.P.R.A. sec. 3661.

*"Obligaciones de la sociedad de gananciales*

"Serán de cargo de la sociedad de gananciales:

"(1) Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges.

"(2) Los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales.

"(3) Las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges. Las reparaciones mayores no serán de cargo de la sociedad.

"(4) Las reparaciones mayores o menores de los bienes gananciales.

"(5) *El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges.*

"(6) Los préstamos personales en que incurra cualquiera de los cónyuges." (Énfasis suplido.)

nerlos; lo contrario, ocasionaría disgustos y discordias en los segundos y ulteriores matrimonios."

El principio es lógico, puesto que todo el trabajo del padre o de la madre, y todo su capital, y aun el de sus hijos menores en su caso, pasa a ser utilizado y aprovechado por la sociedad de gananciales, y de los productos de ese trabajo y de los frutos de ese capital habían de sacarse los alimentos, nada más natural que de tal fondo se tome lo necesario al efecto. (Énfasis suplido.) J.M. Manresa, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1969, T. IX, pág. 738.[11]

█ Por lo tanto, cualquier nueva sociedad de gananciales que se cree será responsable del sustento y alimentos de los hijos menores de edad habidos en un anterior matrimonio de alguno de sus componentes. En su consecuencia, al fijar la pensión alimenticia de los menores, el tribunal deberá tomar en consideración la capacidad económica de la nueva sociedad conyugal. Art. 145 del Código Civil, 31 L.P.R.A. sec. 564; *Vega v. Vega Oliver*, supra; *Mundo v. Cervoni*, 115 D.P.R. 422, 424 (1984).

█ La Ley Especial de Sustento de Menores, Sec. II, Art. 2(9), 8 L.P.R.A. sec. 501(9), define los ingresos que se tomarán en cuenta para determinar la pensión alimenticia de la manera siguiente:

(9) "Ingresos" significa cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno Federal de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera

---

[11] También, veáse Q.M. Scaevola, *Código Civil*, 2da ed., Madrid, Ed. Reus, 1967, T. XXII, págs. 514–515.

que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad, y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.[12]

■ En *Negrón Rivera y Bonilla, Ex parte*, supra, dijimos que para que proceda declarar con lugar una moción de rebaja de pensión alimenticia es necesario que la parte peticionaria demuestre que ha ocurrido un cambio sustancial en las circunstancias que estaban presentes al momento en que se fijó la pensión, de forma tal que se haya afectado la capacidad del alimentante para proveer los alimentos. Véase, también, Sec. VI, Art. 19 de la Ley Especial de Sustento de Menores, *supra*.

---

[12] Al hacer la determinación sobre los ingresos de un alimentante también debe tomarse en consideración lo expresado en el Informe del Secretario de Hacienda sobre Reforma Contributiva de agosto de 1987, págs. 68–69, sobre la economía subterránea que prevalece en Puerto Rico:

"Según el estudio de Booz-Allen & Hamilton, el total del ingreso no declarado en Puerto Rico —conocido por economía subterránea— asciende a $2,500 millones al año lo que representa un 17% del ingreso bruto personal. De este total unos $1,500 millones corresponden a personas que no declaran ingreso alguno y unos $1,000 millones a personas que declaran parte pero no todo su ingreso.

"El estudio confirma, además, que el mayor grado de evasión proviene de personas con negocios propios, seguidos por varios grupos de profesionales y, finalmente, por algunos contribuyentes asalariados.

. . . . . . . .

"En términos relativos, la economía subterránea en Puerto Rico es dos veces mayor que en los Estados Unidos, donde representa sólo el 8% del ingreso bruto nacional . . .".

## IV

Con este trasfondo, pasemos a analizar los hechos y el derecho aplicable. Por provenir nuestras Reglas de Evidencia de las Reglas de Evidencia federales, las Reglas Uniformes de Evidencia, el Código de Evidencia de California y el Código Modelo de Evidencia, haremos referencia a la jurisprudencia que bajo reglas similares se ha desarrollado en Estados Unidos. Para comenzar quisiéramos dejar claramente establecido que el tribunal de instancia, al determinar la capacidad económica de un alimentante para proveer alimentos, no está limitado a considerar únicamente evidencia, testifical y documental, sobre ingresos.[13] Puede, al fijar la cuantía de la pensión, considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. *Commonwealth Ex Rel. Travitzky v. Travitzky*, 326 A.2d 883, 885 (Penn. 1974); *Commonwealth v. Sosigian*, 195 A.2d 883, 885 (Penn. 1963); *Commonwealth v. Trichon*, 150 A.2d 176, 178 (Penn. 1959); *Commonwealth v. Misciagna*, 146 A.2d 643, 644 (Penn. 1958); *Commonwealth v. Hoffman*, 135 A.2d 822, 823 (Penn. 1957). El tribunal, a base de la prueba circunstancial que se le someta, puede inferir que el alimentante cuenta con medios suficientes para cumplir con la obligación alimenticia que se le imponga.

La norma de derecho con respecto a evidencia circunstancial es que procede que se dé por probado un hecho a base de una inferencia, cuando hay una relación racio-

---

[13] También quisiéramos indicar que por tratarse de una moción de rebaja de pensión alimenticia el peso de la prueba recae sobre el demandado solicitante. Éste tiene que probar el cambio sustancial en sus circunstancias económicas o un cambio sustancial en las necesidades de sus hijos que ameriten el que el tribunal le conceda la rebaja.

nal entre el hecho básico probado y el inferido. *Murcelo v. H.I. Hettinger & Co.*, 92 D.P.R. 411 (1965); E.L. Chiesa, *Práctica Procesal Puertorriqueña, Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, Cap. III, págs. 41–46; *McCormick on Evidence*, Cap. 36, Sec. 345 (3ra ed. 1984); G.C. Lilly, *An Introduction to the Law of Evidence*, Minnesota, West Pub. Co., 1978, Cap. V, pág. 100; J.H. Wigmore, *A Student's Textbook of the Law of Evidence*, Brooklyn, The Foundation Press, 1935, Cap. IV, pág. 52; *Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486, 490 (4to Cir. 1983). En el caso de autos se probó, a base del testimonio del propio demandado, que un mes después de presentar la moción de rebaja de pensión alimenticia éste pudo hacer un viaje de placer de aproximadamente dos (2) semanas por Estados Unidos. Viajó con dos (2) de sus hijos y su actual esposa a Disney World, Florida; de allí continuó con su esposa hasta Arizona y California. Todo el tiempo se hospedaron en hoteles, tuvieron que comer en restaurantes y, lógicamente, hay que inferir que incurrieron en otros gastos para divertirse. Además, alquilaron carro. También se probó que el demandado recurrente posee varios vehículos: un Fiat, una motora y un Porsche.(14) Su esposa tiene un Oldsmobile, modelo Cutlass Supreme. El Porsche lo fue a comprar a Alemania "en septiembre del año pasado". De estos hechos probados, un hombre razonable, fundándose en la razón y la experiencia, puede lógicamente inferir que el demandado posee medios económicos suficientes para enfrentarse a las necesidades de sus tres (3) hijos menores y pagar la pensión que le impuso el tribunal. *Tot v. United States*, 319 U.S. 463, 467 (1943); *Jim Crockett Promotion, Inc. v. City of Char-*

---

(14) A pesar de que alegó que el vehículo pertenece a su actual esposa, de su propio testimonio se puede razonablemente concluir que él es el verdadero dueño: lo fue a comprar a Alemania, pagó el viaje y pagó el vehículo; los documentos en Alemania estaban a su nombre, y lo entró a Puerto Rico también a su nombre.

*lotte,* supra. Su estilo de vida, sus propiedades y su capacidad para generar ingresos así lo demuestran.([15])

Un análisis de la exposición narrativa de la prueba y de los documentos que obran en el expediente demuestra que el demandado recurrente tampoco probó que hubiesen ocurrido cambios sustanciales, significativos o imprevistos en las circunstancias en que se apoyó el tribunal para fijar la cuantía de la pensión alimenticia que ahora pretende se reduzca. *Negrón Rivera y Bonilla, Ex parte,* supra; Sec. IV, Art. 19 de la Ley Especial de Sustento de Menores, *supra.* Si además tomamos en consideración que la nueva sociedad de gananciales constituida por el demandado recurrente es responsable por las necesidades alimenticias de los hijos menores habidos en su matrimonio anterior, podemos concluir que el demandado recurrente está ahora en mejor posición económica que antes para afrontar el pago de la pensión de cuatrocientos dólares ($400) quincenales que le impuso el tribunal.

## V

El segundo error tampoco se cometió. Recientemente resolvimos "que los tribunales de instancia deb[ían] de abstenerse de intervenir con el monto de las pensiones alimenticias devengadas con anterioridad a la fecha de radicación de las solicitudes de rebaja de pensión alimenticia, excepto en aquellas *situaciones extraordinarias* en que el aliment[ante] pueda demostrar —en adición a la procedencia de la rebaja propiamente— que por razón de una enferme-

---

([15]) Igual sucede en casos contributivos donde se ha recibido prueba del estilo de vida del contribuyente para determinar la verdadera situación económica de éste para fines de imponer la contribución correspondiente y/o descubrir un caso de fraude contributivo. *United States v. Sorrentino,* 726 F.2d 876 (1er Cir. 1984); *United States v. Goichman,* 407 F. Supp. 980 (Penn. 1976); *Taglianetti v. United States,* 398 F.2d 558 (1er Cir. 1968).

dad o accidente de índole incapacitante estuvo realmente imposibilitado de radicar a tiempo la moción de rebaja correspondiente". (Énfasis en el original.) *Valencia, Ex parte*, 116 D.P.R. 909, 916–917 (1986). En el caso de autos no se dieron las situaciones extraordinarias que permitirían, a manera de excepción, retrotraer la rebaja de la pensión a una fecha anterior a la presentación de la moción de rebaja de pensión alimenticia. Lo que pretende el demandado recurrente es que, mediante la moción de rebaja de pensión alimenticia, se reconsidere la resolución del tribunal de instancia que denegó la moción de reconsideración que presentó el 27 de marzo de 1986 en relación con la pensión alimenticia original impuesta en la sentencia de divorcio dictada el 14 de marzo de 1986. Esta es la misma resolución que este Tribunal se negó a revisar.(16) La pretensión del demandado recurrente es insostenible.

Por todo lo antes expuesto, *procede que se dicte sentencia, se confirme la resolución dictada por el Tribunal Superior, Sala de Carolina, de 24 de septiembre de 1986 y se devuelva el caso para que continúen los procedimientos de forma compatible con esta opinión.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita, y los Jueces Asociados·Señores Negrón García y Ortiz no intervinieron.

----

(16) Luego de haber denegado el recurso presentado por el demandado recurrente para revisar la sentencia de divorcio, en la cual se concedió la pensión original de quinientos dólares ($500) quincenales, el demandado nos presentó dos mociones de reconsideración. Ambas las declaramos sin lugar.