# 95 DTA 44

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE ARECIBO Y UTUADO**

SANTOS LAUREANO MARTINEZ
Demandante-Recurrente

v.

TRIBUNAL DE PRIMERA INSTANCIA SALA DE ARECIBO
Demandada-Recurrida

Núm. KLCE-95-00143

San Juan, Puerto Rico, a 6 de abril de 1995

Panel integrado por su presidente, Juez Arbona Lago
y los Jueces Giménez Muñoz y Salas Soler

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Don Santos Laureano Martínez y Doña María Brito De Jesús disolvieron el vínculo marital que les unía, en la causa CDI91-0794 (separación), luego de haber procreado dos hijos que actualmente cuentan con 14 y 17 años. Ambos menores residen con la madre en la misma vivienda ganancial (casa de dos plantas, 900 m/c de solar en la Urb. El Paraíso), que el señor Laureano valora en $130,000 y no tiene deuda.

Surge también del expediente, que vigente el matrimonio, la madre no trabajaba fuera del hogar ni devengaba ingresos. Todas las necesidades económicas del núcleo familiar las suplía el señor Laureano, quien era y es dueño de un negocio al detal, conocido como Colmado Laureano, sito en la Calle C, Núm. 20 de Víctor Rojas I, Arecibo, Puerto Rico.

Luego del divorcio los menores recibían, por conducto de su madre, una pensión paterna de $343 al mes. Luego del divorcio, la señora Brito trabajó fuera del hogar generando ingresos hasta que en septiembre de 1993 perdió su empleo, con la disolución de la corporación CODEA y durante el año siguiente recibió $101 quincenales en calidad de beneficios por desempleo.

El señor Laureano contrajo nuevas nupcias. El 10 de mayo de 1994 la señora Brito solicitó modificación de la pensión y mediante Resolución del 2 de diciembre de 1994, efectivo el 1 de julio de 1994, la Sala de Arecibo del Tribunal Superior de Puerto Rico (Hon. Myrta Irizarry Ríos, J.) aumentó la pensión alimentaria impuesta al señor Laureano en $167 al mes, para un total de $510 ($343 + $167 = $510).

Al así actuar el Tribunal Superior tuvo el beneficio del informe rendido por la Examinadora de Pensiones Alimentarias, quien a su vez escuchó prueba durante tres y media horas el 9 de noviembre de 1994.

No conforme, el señor Laureano solicitó en tiempo reconsideración la cual fue atendida por el tribunal de instancia y resuelta el 28 de febrero de 1995.

Imputa el recurrente que:

*"1. ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR QUE EL PADRE ALIMENTANTE ESTABA OCULTANDO LOS INGRESOS QUE REALMENTE TIENE Y QUE HACIA USO DE LA ECONOMIA SUBTERRANEA RAZON POR LA CUAL SE ESTIMO UN SALARIO MINIMO DE $1,650.00 ESTIMANDO SU INGRESO MENSUAL NETO EN $1,163.00.*

*2. ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL NO DEJAR SIN EFECTO LA DETERMINACION DE HOGAR SEGURO EN EL PRESENTE CASO.*

*3. ERRO EL HONORABLE TRIBUNAL DE INSTANCIA AL PERMITIR QUE LA EXAMINADORA DE PENSIONES ALIMENTICIAS ENTRARA EN CASO DE NATURALEZA COMPLEJA Y MUCHO MAS AUN DICTARA RESOLUCION SIN DARLE OPORTUNIDAD A LA PARTE DEMANDANTE DE EXAMINAR Y REFUTAR EL EXAMEN DE LA OFICIAL EXAMINADORA."*

## HECHOS, DISCUSION Y DICTAMEN

Hemos examinado y estudiado cuidadosamente la petición de *certiorari* y el contenido íntegro del legajo ante nos.

### I

Durante el matrimonio Laureano-Brito el señor Laureano era el único sostén económico del hogar constituido por él, su esposa y los dos hijos de ambos. El propio recurrente enumera, sin objetar, la lista de 28 partidas que la señora Brito reclama como gastos promedios mensuales de la casa, para un total de $1,132.28 que excluye el consumo del señor Laureano, que ya no pertenece a dicho núcleo familiar y renta, porque la señora Brito y los hijos de ambos habitan la vivienda ganancial, todavía indivisa. Para aquella época y al presente el señor Laureano era y todavía es dueño de un pequeño colmado (Colmado Laureano) en el que también se expenden alimentos preparados (bocadillos, hamburguesas) y bebidas gaseosas y alcohólicas.

El Tribunal consideró probado, sin objeción alguna por parte del señor Laureano, que los gastos mensuales de los alimentistas ascienden a $874 al mes e impuso al señor Laureano un abono de $510, equivalente al 58% de ese total.

Alega el peticionario que sus ingresos netos mensuales ascienden a $600 y objeta que para la determinación de tal aumento en la pensión se descarte el contenido de sus planillas de contribución sobre ingresos, planillas de seguro social y estados de su cuenta bancaria durante el 1993 y 1994.

Objeta también que en instancia se concluya que oculta ingresos y participa de la economía subterránea y que se descarte el salario mínimo como parámetro para fijar su obligación alimentaria.

El planteamiento carece de mérito. El recurrente pretende limitar el ámbito de prueba, en cuanto a sus ingresos se refiere, al contenido de sus planillas de contribución sobre ingresos, el consecuente pago al seguro social y los estados bancarios de su cuenta, todo ello sostenido en la premisa de que tales informes no han sido desacreditados por el Departamento de Hacienda y al amparo del inciso 32 de la Regla 16 de Evidencia gozan de la presunción de que la ley ha sido acatada en su preparación.

Las planillas de contribución sobre ingresos rendidas por el recurrente para los años contributivos 1991 al 1993 (**vigente el matrimonio**) arrojan volúmenes anuales de venta ascendentes a $32,159, $34,763 y $36,903 y beneficios de $2,679, $2,945 y $2,703, respectivamente, para **un promedio mensual de $231.30.**

Durante los 20 meses comprendidos entre enero de 1993 a agosto de 1994 no se efectuó depósito alguno en la cuenta bancaria en 8 meses, en 5 meses se depositó la suma exacta de $300 y en 6 meses el depósito mensual fluctuó entre $474.09 y $356. En el mes restante el depósito ascendió a $165.39. Se depositó un total de $4,190, para un **promedio mensual de $209.50.**

No puede el recurrente pretender que el Tribunal de Instancia acepte tales documentos como reflejantes de su ingreso neto, cuando lo ahí indicado sólo alcanza, aproximadamente, a una tercera parte de los $600 que el mismo reclama como ingreso promedio mensual, cuando la única fuente de ingreso declarada es dicho negocio al detal, según reflejado por las antes mencionadas planillas sobre ingresos. La conclusión enunciada en instancia es inescapable y la invitación del recurrente a que se utilice, como medida alterna en su caso, el salario mínimo para el cómputo de su ingreso, resulta totalmente inaceptable por no ser fundamento

real en esta causa ni tener relevancia alguna con la capacidad económica del alimentante, que no devenga el salario mínimo.

La Resolución del 28 de febrero de 1995 del Ilustrado Tribunal de Instancia es concisa y elocuente a este respecto. Los propios planteamientos del señor Laureano se encargan de desacreditar su planteamiento y fuerzan la conclusión de instancia.

Al respecto, en *López v. Rodríguez,* 121 D.P.R. 23, 33 (1988), se expresó que:

*"Al determinar la capacidad económica de un alimentante para proveer alimentos [el Tribunal] no está limitado a considerar únicamente evidencia testifical y documental, sobre ingresos. (nota al calce omitida). Puede, al fijar la cuantía de la pensión considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. (citas omitidas). El tribunal, a base de la prueba circunstancial que se le someta, puede inferir que el alimentante cuenta con medios suficientes para cumplir con la obligación alimenticia que se le imponga."*

Abundando en los factores a considerar al hacer la determinación sobre la capacidad económica del alimentante, nuestro más alto foro señaló en *López, supra,* pág. 32, que:

*"También debe tomarse en consideración lo expresado en el Informe del Secretario de Hacienda Sobre Reforma Contributiva de agosto de 1987, págs. 68-69, sobre la economía subterránea que prevalece en Puerto Rico."*

## II

El recurrente dedica unas 16 líneas a la discusión del segundo error (determinación de hogar seguro) y no nos pone en condición de aquilatar su petición. Desconocemos con que *"requisitos"* la Recurrida no cumple ni cuales son los hechos *"insuficientes para que se active la aplicación del hogar seguro".* El asunto no fue planteado en instancia en la Moción de Reconsideración del 13 de enero de 1995 ni en la Resolución del Tribunal del 28 de febrero de 1995. El planteamiento no cumple con los requisitos mínimos del Reglamento del Tribunal de Circuito de Apelaciones, Regla 19, por lo que se desestima.

## III

El recurrente, en retórica conclusoria, señala que el asunto de marras es de *"naturaleza compleja"* y no debió haber sido atendido por la Examinadora de Pensiones, en violación al mandato de ley incluido en el Art. 14 de L.E.S.M., 8 L.P.R.A. Para sustentar el planteamiento señala que la examinadora *"...entró en una materia sumamente compleja y ajena a sus facultades al interpretar planillas en materia sumamente de especialidad e ir por encima de las presunciones de la Regla 16 y establecer que este señor a la misma vez que rendía planillas paralelamente caminaba por una economía subterránea".*

El argumento del recurrente resulta contradictorio e insostenible. Surge claramente de autos que la Examinadora y el Tribunal no aceptaron las planillas de contribución sobre ingresos del recurrente como prueba indubitada del ingreso del alimentante y no entraron a interpretar *"materia sumamente especializada".* Todo lo contrario, las rechazaron como no confiables, lo que resulta estar plenamente avalado en el análisis del récord, como ya indicáramos.

El recurrente estaba al tanto y conocía de antemano los particulares de su causa. El récord también demuestra que la vista ante la Examinadora fue retrasada por el descubrimiento de prueba que advirtió al recurrente respecto a la posición de la otra parte. La causa no es compleja y en caso contrario, el planteamiento de complejidad resulta tardío levantado por

primera vez a la fecha de la Moción de Reconsideración de 13 de enero de 1995.

En cuanto a lo demás, basta señalar que la ley autoriza al Examinador de Pensiones a recibir y aquilatar prueba para rendir un informe con determinaciones de hechos, conclusiones de derecho y recomendaciones al Tribunal (Art. 13(c) y 14 de la ley, *supra*).

El recurrente no expone fundamento válido alguno que nos autorice a intervenir con la apreciación de la ilustrada Sala de Instancia que lo adoptó. El recurrente tuvo amplia oportunidad en la antes referida Moción de Reconsideración para exponer directamente ante el foro. La Resolución del 28 de febrero de 1995 del Tribunal *"a quo"*, es amplia, abarcadora y adjudica adecuadamente los planteamientos del recurrente.

Resolvemos no expedir el auto solicitado. Resulta inmeritorio el recurso.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General