# 99 DTA 103

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL II – BAYAMON**
**PANEL I**

NORMA IRIS MARRERO CRUZ
Demandante-Recurrida

v.

ABIUD ASTACIO ACOSTA
Demandado-Recurrente

Núm. KLCE-99-00123

RECEIVED
SEP 2 8 1999
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 15 de marzo de 1999

Panel integrado por su Presidente, el Juez Sánchez Martínez,
la Jueza Ramos Buonomo y la Jueza Cotto Vives

Cotto Vives, Jueza Ponente

KGV
74
21995
v.5
pt. 1

## TEXTO COMPLETO DE LA SENTENCIA

El señor Abiud Astacio Acosta (el Sr. Astacio) presentó un auxilio de jurisdicción y solicitó la revocación de una resolución sobre pensiones alimentarias dictada por el Tribunal de Primera Instancia. Sala de Bayamón, el 10 de diciembre de 1998. Dicha resolución estableció, entre otros asuntos, una pensión alimentaria *pendente lite* de trescientos ochenta y cuatro dólares con noventa y seis centavos ($384.96) semanales, retroactiva al 13 de noviembre de 1997, para beneficio de dos hijos menores habidos en el matrimonio del Sr. Astacio con la Sra. Norma Iris Marrero Cruz (la Sra. Marrero), matrimonio que se halla en proceso de divorcio.

Por las razones que a continuación relacionamos, expedimos el auto, revocamos la orden recurrida y devolvemos el caso al Tribunal de Primera Instancia para que reexamine el caso a tenor con lo dispuesto en esta opinión.

### I

El 13 de noviembre de 1997 la Sra. Marrero presentó una solicitud de alimentos pendente lite para sus dos hijos menores, al instar demanda de divorcio por las causales de trato cruel y abandono contra el Sr. Astacio. Mediante una vista celebrada el 10 de diciembre de 1997, el Tribunal de Primera Instancia estableció el 27 de enero de 1998 una pensión provisional de setecientos dólares ($700.00) mensuales, quedando pendiente la retroactividad de la misma hasta que se estableciese la pensión definitiva. La vista en su fondo ante el Examinador de Pensiones Alimentarias para establecer la pensión definitiva pendente lite se celebró los días 13 y 17 de noviembre de 1998, emitiéndose el informe correspondiente el 8 de diciembre de 1998. El 10 de diciembre de 1998 el Tribunal de Primera Instancia adoptó dicho informe y emitió la resolución objeto del presente recurso, notificada el 15 de enero de 1999.

Inconforme con la resolución emitida, el Sr. Astacio solicitó el 27 de enero de 1999 al Tribunal de Primera Instancia determinaciones de hechos adicionales.

El 16 de febrero de 1999, sin que se hubiera expresado el Tribunal de Primera Instancia respecto a la moción solicitando determinaciones de hechos adicionales, el Sr. Astacio instó el presente recurso. ▉ Señaló, en lo esencial, que erró el Tribunal de Primera Instancia al utilizar evidencia incorrecta para imputarle un ciento por ciento (100%) adicional al salario neto informado en la Planilla de Información Personal, resultando de ello una pensión alimentaria incorrecta.

Entre otros puntos, el Sr. Astacio señala que el Examinador utilizó evidencia *"autoservida";* que estimó el ingreso promedio para el 1996, a base de unos ingresos extraordinarios que no debió tomar en cuenta, entre ellos, un préstamo para mejoras al hogar y un dinero recibido de la venta de un bien privativo; y que en el hogar donde reside la Sra. Marrero y los dos menores reside una hija que ésta había tenido en un matrimonio anterior,

sin que se haya incluido este dato en el cálculo de la aportación del padre y la madre a la vivienda. ■

El Sr. Astacio tiene razón al cuestionar la pensión establecida, en la medida en que del Informe del Examinador de Pensiones Alimentarias no se reflejan adecuadamente los fundamentos para la imputación de ingresos que efectúa y no fue considerada en los cómputos la utilización de la vivienda por la otra hija de la Sra. Marrero. Veamos.

## II

La Ley Especial de Sustento de Menores establece en el Art. 19 una presunción a favor de la corrección y adecuacidad de la pensión alimentaria que resulte de la aplicación de las guías mandatorias que establece la propia ley. 8 L.P.R.A. sec. 518 (Supl. 1998). Según dicho artículo, *"la parte interesada en impugnar la cuantía de alimentos resultante de las guías, deberá presentar evidencia para rebatir la presunción. Si a base de la evidencia presentada, se determina que la aplicación de las guías resultara en una pensión alimentaria injusta o inadecuada, así se hará constar en la resolución o sentencia que se emita. En ese caso, en lugar de utilizar las guías, la pensión se determinará a base de una serie de factores que el tribunal aplicará discrecionalmente, entre los cuales el citado artículo señala aspectos tales como: los recursos económicos de los padres y del menor; la salud física y espiritual del menor y sus necesidades; el nivel de vida que hubiera disfrutado el menor si la familia hubiese seguido intacta; las consecuencias contributivas para las partes; y las contribuciones no monetarias de cada padre al cuidado y bienestar del menor. También deberá hacer constar en la resolución cuál habría sido el monto de la pensión de haberse aplicado las guías."* Id. (Enfasis nuestro.)

La Ley Especial de Sustento de Menores define, además, en el Art. 2, 8 L.P.R.A. sec. 501 (Supl. 1998), el concepto de **ingresos** de un modo que Sarah Torres Peralta describe como *"sumamente amplio y muy extenso"*. Sarah Torres Peralta, *La Ley Especial de Sustento de Menores de 1994 y El Derecho de Alimentos en Puerto Rico*, San Juan, Publicaciones STP, Inc., Edición Especial 1997, pág. 25. Comprende, entre otros, cualquier ganancia o beneficio fruto de sueldos o compensación por servicios personales, profesiones, oficios, industrias, negocios, comercio o ventas; todo ingreso derivado de intereses, rentas, dividendos, beneficios de sociedad; compensaciones por desempleo, retiro, incapacidad, pensiones; en fin, prácticamente todo tipo de ingreso.

El mismo Art. 19 previamente citado refuerza la amplitud del concepto de ingresos al indicar, en el segundo párrafo, que para la determinación de los recursos económicos del alimentante se tomará en consideración, en adición al ingreso neto ordinario, *"el capital o patrimonio total del alimentante"*. 8 L.P.R.A. sec. 518 (Supl. 1998) (énfasis nuestro.)

En **ese mismo espíritu, se ha desarrollado el concepto de ingresos imputados.** Según Torres Peralta, el concepto de imputación de ingresos al alimentante se refiere a aquellas partidas que, aunque no le proveen ingresos directos en dinero al alimentante, son pertinentes para la determinación de su ingreso bruto. Entre las partidas a considerarse, dicha autora menciona algunos ejemplos, tales como, la reducción voluntaria de ingresos por parte del alimentante como mecanismo para tratar de minimizar o, en ocasiones, eliminar completamente la obligación alimentaria; o el dinero aportado por terceros al alimentante mediante beneficios no monetarios o pagos indirectos, como pagarle la renta, permitirle el uso del automóvil o mantenerlo gratuitamente en el hogar de ese tercero, entre otros. Según la autora, la consideración de tales elementos, traducido en valor económico, se sumará al ingreso bruto del alimentante para, luego de efectuar las deducciones necesarias, establecer cuál es el ingreso neto a base del cual se fijará la obligación alimentaria. *Id.*, págs. 2.26-2.27.

Este concepto de ingresos imputados fue examinado por el Tribunal Supremo en *López v. Rodríguez*, 121 D. P.R. 23 (1988). En dicho caso, se imputan los ingresos correspondientes a la economía subterránea al padre alimentante, al no explicar el alimentante el origen del dinero utilizado para aspectos tales como el viaje de

bodas, la compra del vehículo de lujo o el viaje que efectuó a Alemania para adquirir dicho automóvil. El Tribunal Supremo interpreta los hechos del caso y examina la imputación de ingresos, a base de la evidencia **circunstancial** desfilada ante él. ■ Como indica el Tribunal Supremo en dicho caso, al determinar la capacidad económica no está limitado a considerar únicamente la evidencia testifical y documental sobre los ingresos. *López v. Rodríguez supra*, a la pág. 33.

El Tribunal Supremo ha indicado, además, en *Rodríguez Rosado v. Zayas Martínez,* 133 D.P.R. __ (1993), **93 J.T.S. 75,** a la pág. 10721, que al analizar la. capacidad económica del alimentante, tanto el examinador de pensiones alimentarias como el juez deberán tomar en cuenta todos los ingresos devengados por el alimentante aunque los mismos no aparezcan informados en la Planilla de Información Personal y Económica.

## III

En resumen, la pensión alimentaria normalmente se fijará a base de las guías mandatorias que la Ley Especial para el Sustento de Menores dispone. De impugnarse la pensión resultante de la aplicación de las guías, deberá hacerse constar en la resolución resultante tanto los fundamentos para la no aplicabilidad de las guías, como la pensión que se hubiese fijado de haberlas utilizado. Para determinar la pensión, podrán utilizarse los más diversos factores, teniendo en cuenta, además del ingreso neto del alimentante, el patrimonio total de éste, la posible imputación de ingresos, ya sean provenientes de la economía subterránea o de otras fuentes, que el tribunal examinará a base de toda la evidencia desfilada ante él, tanto directa como circunstancial. En el caso de autos, el informe sometido por el Examinador de Pensiones Alimentarias al Tribunal de Primera Instancia, señala que con anterioridad a la celebración de la vista, la Sra. Marrero y el Sr. Astacio habían intercambiado las correspondientes Planillas de Información Personal y Económica y que en la vista se considautó, además, prueba testifical presentada por las partes y prueba documental adicional a las planillas. ■ En la resolución, sin embargo, el Examinador es muy parco al establecer, en la Determinación de Hecho número cuatro (4), las razones por las cuales ha imputado un total de mil trescientos noventa y un dolares con cincuenta y tres centavos ($1,393.53) al ingreso bruto del Sr. Astacio.

## IV

Por las razones antes expuestas, denegamos la moción de auxilio de jurisdicción, expedimos el auto de *certiorari* solicitado; revocamos la resolución recurrida y devolvemos el caso al Tribunal de Primera Instancia para que reexamine el caso a tenor con lo dispuesto en esta sentencia y determine si procede la impugnación de la aplicación de las guías mandatorias, a base de la documentación en el expediente y de la prueba desfilada, debiendo expresar adecuadamente los fundamentos para la desviación de las guías.

Deberá a su vez, el tribunal recurrido, establecer claramente los fundamentos para la imputación de ingresos y reexaminará lo relativo al número de personas que comparten la residencia de los menores, para realizar los ajustes necesarios de determinarse que proceden. ■ La pensión alimentaria establecida mediante la resolución del 10 de diciembre de 1998 continuará en vigor en tanto se determine cuál será el monto de la pensión final, debiendo acreditarse, de así establecerse, el crédito o el exceso resultante de la determinación final.

Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 99 DTA 103**

1. De hecho, el Tribunal de Primera Instancia emitió una orden el 23 de febrero de 1999, en la que declaró *"académica"* [sic]

la moción solicitando determinaciones de hecho adicionales.

**2.** La afirmación del representante legal del Sr. Astacio, en el sentido de que éste proveyó información incorrecta para la obtención de un préstamo, le imputa a su cliente una violación a las disposiciones de ley a nivel federal sobre préstamos hipotecarios, 18 U.S.C. sec. 1014. En el futuro, dicho abogado deberá examinar con cuidado su decisión de levantar ese tipo de planteamientos ante los tribunales.

**3.** En su escrito, el Sr. Astacio señala que la imputación de ingresos debe efectuarse, de acuerdo a *López v. Rodríguez, supra,* en función del 17% que dicho caso estima se genera en Puerto Rico por la economía subterránea. Esa es una interpretación sumamente limitada del caso. No existe en realidad limitación a la cuantía que se pueda imputar a los ingresos de un alimentante; dependerá de la prueba desfilada y de la apreciación del Tribunal de Primera Instancia.

**4.** El examinador señala que obran en el expediente copia de las referidas planillas, como hemos podido constatar al examinar los autos del Tribunal de Primera Instancia. De hecho, el Sr. Astacio no cumple con la Regla 34 (E) del Reglamento del Tribunal de Circuito de Apelaciones, en específico los incisos (d) y (e), que requieren se incluya como parte del apéndice toda moción o escrito de las partes, o todo documento que conste en el expediente del Tribunal de Primera Instancia que sean relevantes a la controversia planteada. 4 L.P.R.A. Ap. XXII-A, R. 34 (E) (1) (d) y (e). Por el inteiés que revisten los alimentos de menores, sin embargo, hemos optado por examinar el expediente del Tribunal de Primera Instancia y considerar el recurso presentado.

**5.** Si se determinara que los ingresos de alguna de las partes tienen su origen en la economía subterránea y no han sido debidamente informados al fisco, el Tribunal de Primera Instancia deberá realizar la notificación correspondiente al Secretario de Hacienda.