TEXTO COMPLETO DE LA RESOLUCION
Recurre ante nos, el peticionario Tomás Manuel Ramírez Gelpí, para que revoquemos la resolución nunc pro tunc del 26 de mayo de 2000 emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, (Hon. José A. Cruz Noel). En la misma se adopta el informe rendido por la Examinadora de Pensiones Alimenticias recomendando al Tribunal que le imponga al demandado un pago de $2,004.61 mensuales en concepto de pensión alimentaria para beneficio de su hijo menor de edad. También se le ordenó el pago de $700.00 mensuales en concepto de alimentos pendente lite para beneficio de su esposa, Victoria Sotillo Soto, y el que continúe con el pago como parte de la pensión alimentaria pendente lite de la guagua de la esposa a razón de $450.00 mensuales, el seguro de ésta y $300.00 mensuales para la renta del apartamento que ocupa la esposa con su hijo. La parte recurrida ha presentado su escrito en oposición al recurso y procedemos a resolver.
I
El demandado-peticionario, Tomás Manuel Ramírez Gelpí, y la demandante, Victoria Sotillo Soto, contrajeron matrimonio el 17 de noviembre de 1988. Como fruto de su matrimonio nació su único hijo, Enrique Manuel Ramírez Sotillo, de diez (10) años de edad. Después de diez (10) años de casados, las partes deciden divorciarse. El 3 de marzo de 1999, se radicó una petición de divorcio por mutuo consentimiento. El 5 de mayo de 1999, la demandante radica Moción Retirando la Petición de Divorcio por Mutuo Consentimiento. El 13 de agosto de 1999, se celebró una vista ante el Tribunal de Instancia donde se fijó una pensión provisional de $300.00 mensuales para el menor y la demandante.
El 10 de noviembre de 1999, se celebró ante la Oficial Examinadora de Pensiones Alimenticias la vista sobre la fijación final de pensión alimentaria para el menor y pendente lite para la demandante. De un análisis de la prueba documental presentada por el demandado y lo declarado en la vista, la Oficial Examinadora rindió su informe el 27 de diciembre de 1999. El Tribunal adopta el mismo y lo aprueba en la resolución del 27 de enero de 2000 y notificada el 14 de febrero de 2000.
El demandado, inconforme con la determinación, radica Moción Solicitando Determinaciones de Hechos y Conclusiones de Derecho Adicionales y Moción de Reconsideración el día 23 de febrero de 2000. El Tribunal acoge la moción y dicta resolución el 26 de mayo de 2000 en el cual aprueba y adopta el segundo informe rendido por la Oficial Examinadora del 15 de mayo de 2000. La resolución confirma la resolución anterior manteniendo las mismas cantidades a adjudicarse al menor y a la demandante.
El 3 de julio de 2000, el peticionario radicó en la Secretaría del Tribunal de Circuito de Apelaciones la *601 petición de certiorari alegando que se cometieron los siguientes errores:

“Erró el Honorable Tribunal de Instancia de Mayagüez al aceptar en la totalidad el informe de la oficial examinadora de pensiones alimenticias del 27 de diciembre de 1999.

Erró el Honorable Tribunal de Primera Instancia de Mayagüez al aceptar como correctas, las partidas utilizadas en los cómputos para determinar el ingreso neto del demandado, utilizando, para fijar, el informe de la oficial examinadora de pensiones alimenticias, el primero basado en el estado financiero y el segundo basado en la planilla informativa del Sr. Tomás Ramírez Gelpí. ”

II
El Tribunal Supremo ha reiterado en varias ocasiones "que los casos relacionados con alimentos de menores están revestidos del más alto interés público". Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61 (1987).
El argumento principal del demandado en su escrito de apelación, es que la oficial examinadora cometió un error en el cómputo del ingreso neto mensual y que no descontó de ese ingreso neto los $1,500.00 mensuales que el demandado consigna en el Tribunal como pensión alimenticia a su excónyuge. El demandado alega que la oficial examinadora sumó incorrectamente la partida de ingreso neto del período y la de ingreso neto de negocios y rentas que aparece en el Estado de Ingresos y Gastos del demandado. La suma de ambas partidas daría un total de $39,922.00. La partida de $8,510.00 (ingreso neto de negocios y renta) es una pérdida, por lo que no se debió haber sumado, más aún cuando ya esa cifra fue restada para así obtener el ingreso neto del período. El verdadero total a tomarse en consideración es el de $31,412.00 que representa el ingreso neto del demandado por un período de seis meses. Si dividimos los $31,412.00 entre seis, nos daría un total de $5,235.00 mensuales de ingreso neto. Esta información aparece en la compilación hecha por el contable Luis B. Rivera Cuebas.
El tribunal de instancia, al determinar la capacidad económica de un alimentante para proveer alimentos, no está limitado a considerar únicamente evidencia, testifical y documental, sobre ingresos. Puede, al fijar la cuantía de la pensión, considerar aspectos, tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. López v. Rodríguez, 121 D.P.R. 23 (1988); Art. 19 de la Ley Especial de Sustento de Menores, 8 L.P.R.A. see. 518. El tribunal, a base de la prueba circunstancial que se le someta, puede inferir que el alimentante cuenta con medios suficientes para cumplir con la obligación alimenticia que se le imponga. López Rodríguez, supra.
La Ley Especial de Sustento de Menores, Sec. II, Art. 2 (9), 8 L.P.R.A. sec. 501 (9), define los ingresos que se tomarán en cuenta para determinar la pensión alimenticia de la manera siguiente:

“(9) "Ingresos" significa cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno Federal de los Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad, y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica. ”

El demandado juramentó, el 16 de septiembre de 1999, en su Planilla de Información Personal y Económica *602 que su ingreso neto mensual es de $6,515.00. Este acto ocurre casi dos meses después de que el demandado presentara su Estado Financiero y el de Ingreso y Gastos. 
De estos documentos se desprende que el ingreso neto mensual del demandado es de $5,235.00. Acto seguido, el demandado, en su escrito de apelación, hace una serie de cálculos matemáticos que finalmente arrojan que su ingreso neto mensual es de $2,591.00. El demandado, ciertamente, quiere confundir con estas alegaciones tanto a la oficial examinadora como al Tribunal.
Al momento de determinar la capacidad económica del demandado, el oficial examinador no está limitado a considerar únicamente evidencia, testifical y documental, sobre ingresos. Considerará aspectos, tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso.
La Oficial Examinadora, en su informe del 15 de mayo de 2000, [5] nos expresa que:

"En cuanto a capital o patrimonio, el demandado tiene el control de dos propiedades. Una está en la República de Venezuela (casa y finca). Esta finca produce Heno. La otra es una finca de veinticinco (25) cuerdas, en Lajas. Esta finca se usa para pasadías y entretenimientos. Allí el demandado tiene 15 ó 20 chivos, 10 cabezas de ganado, pavos, guineas y alrededor de 60 gallos de pelea.

Como parte del estilo de vida de la parte demandada, éste posee un automóvil marca Mercedes Benz que costó $95,000.00 con un pago mensual de $1,500.00. A la fecha de la vista, estaba pagando todos los gastos relacionados con la educación privada del menor en el Colegio SESO (matrícula, mensualidad escolar, libros, uniformes, materiales, tutorías y otros); pagaba además $600.00 mensuales de la casa donde viven la demandante y el menor, la guagua que posee la demandante a razón de $450.00 mensuales, marbete, seguros de la referida guagua, plan médico, pensión alimentaria para su ex-cónyuge a razón de $1,500.00 mensuales, otros seguros, y sus deudas y gastos personales que exceden los $13,000.00 mensuales. Le compró al menor alimentista patines de $250.00, computadora de $2,000.00, le provee al menor beeper y celular y $20.00 semanales para "hamburgers". El demandado viajaba dos veces al año fuera de Puerto Rico con la demandante y el menor y se hospedaban en el Hotel Sheraton. En un viaje llegó a gastar $10,000.00. Le regaló a la demandante unas pantallas de brillantes de $1,000.00. El demandado juega gallos, apuesta hasta $100.00 a uno y paga empleados para mantener la finca de Lajas, bonita.

En cuanto a la naturaleza del empleo del demandado, éste trabaja por su cuenta. Es propietario de unos edificios comerciales para alquiler, además es presidente de Ramírez Gelpí, Inc. y socio gestor de R.T. Sociedad Especial. Ambas empresas se dedican a la renta de edificios.

Tomando en cuenta su estilo de vida, sus propiedades y su capacidad para generar ingresos, queda demostrada su capacidad para afrontar el pago de la pensión impuesta por el tribunal. Si en adición tomamos en consideración que el demandado ya no tiene que pagar la pensión de su ex-cónyuge, podemos concluir que el demandado está ahora en una mejor posición económica que antes para satisfacer las pensiones impuestas a favor del menor y la demandante. El demandado, según se desprende de su Estado de Posición Financiera, posee un capital de $1,988,543.00; este dato demuestra la capacidad para generar ingresos del demandado. ”
En cuanto a la alegación sobre que se le debe deducir los $1,500.00 mensuales de pensión alimenticia a su excónyuge, este planteamiento es académico. La ex-cónyuge del demandado falleció el 29 de mayo de 2000, lo cual extingue esa obligación. En el caso de Galarza v. Mercado Pagán, 95 J.T.S. 164, el Tribunal Supremo resuelvió esta controversia cuando expresó lo siguiente:

"En las Guías Mandatorias se adoptó la definición de ingreso neto contenida en la L.E.S.M. Estas, además, específicamente disponen que "se entiende por deducciones mandatorias aquellas deducciones del salario bruto de una persona que por ley se requieren en el desempeño de su trabajo. Guías Mandatorias, Sección 2. (Enfasis 
*603
suplido.)

Ni en la L.E.S.M. ni en las Guías Mandatorias, se establece que las pensiones alimentarias anteriores impuestas por sentencia, se considerarán deducciones mandatorias por ley para determinar el ingreso neto."
El demandado también alega que la asignación de pensión pendente lite a favor de la demandante no está fundamentada. Lo que da base para la imposición de esta pensión pendente lite es el análisis de toda la información recibida por la oficial examinadora y que hemos transcrito en parte en esta resolución. Claramente, la pensión procede, pues el caso de divorcio no se ha resuelto y el peticionario está en el control de los Bienes Gananciales. Por otro lado, esta pensión pendente lite sólo estará vigente hasta la conclusión del pleito de divorcio. Castrillo v. Palmer, 102 D.P.R. 460 (1974). El demandado podrá después buscar la nivelación dentro de la división de los bienes gananciales.
III
Por lo antes expresado, se deniega la expedición del recurso.
Lo acordó el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIOS 2001 DTA 11
1. Apéndice del demandado, página 44.
2. $31,412.00 + $8,510.02.
3.4 de agosto de 1999.
4. $31,412,00.
5. Apéndice del demandado, páginas 34-35.
6. Apéndice del demandado, página 43.