# 2009 DTA 131

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE PONCE**

GLORISEL NEGRÓN MARTÍNEZ
Apelada

v.

HÉCTOR M. RAMOS RODRÍGUEZ
Apelante

Núm. KLCE-2009-01227

San Juan, Puerto Rico, a 17 de septiembre de 2009

Panel integrado por su Presidente, el Juez Miranda De Hostos,
y los Jueces Escribano Medina y Bermúdez Torres

## TEXTO COMPLETO DE LA SENTENCIA

Comparece la parte apelante Héctor Ramos Rodríguez y solicita la revisión de una sentencia del Tribunal de Primera Instancia, Sala de Ponce, (Hon. Sonia E. Ralat Pérez, J.) del 1ro de junio de 2009, notificado el 8 de junio de 2009. En la misma, el Tribunal estableció al alimentante una pensión alimentaria final de $1,423.00 mensual efectiva al 13 de septiembre de 2007, estableció un plan de $577.00 mensual por una deuda por concepto de retroactivo de $8,892.00. Además ordenó el pago de $500.00 de honorarios de abogados.

### I

El 13 de septiembre de 2007, la apelada, Glorisel Negrón Martínez, presentó una Solicitud de Revisión de Pensión Alimentaria. En la misma, alegó que la pensión alimentaria de sus dos hijos menores de edad había sido estipulada por las partes y fijada por el Tribunal el 29 de de mayo de 2002, fecha en que dictó sentencia de divorcio por la causal de consentimiento mutuo, y que había transcurrido en exceso el término de tres años para la revisión de la pensión. El 25 de septiembre de 2007, el apelante presentó una solicitud de rebaja de pensión alimentaria, toda vez que, según alegó, sus circunstancias habían cambiado desde la fecha de imposición de la pensión porque tenía otra hija que para el 2006 tenía cinco años de edad.

Realizado el descubrimiento de prueba, se celebró vista ante la Examinadora de Pensiones el 2 de marzo de 2009. Luego de sometido el caso, la Examinadora de Pensiones Alimentarias rindió un informe que fue acogido en su totalidad por el Tribunal. En el mismo, se aplicaron las guías mandatorias y se calculó una pensión de $1,423.00 mensuales, que incluye un gasto suplementario de vivienda de $230.00 mensuales y un gasto suplementario escolar de $228.00 mensuales. También determinó un retroactivo de $8,892.00 e impuso un plan de pago de $577.00 mensuales y $500.00 en honorarios de abogado.

El informe fue acogido por el Tribunal en una Resolución dictada el 1ro de junio de 2009, notificada el 8 de junio de 2009. El 22 de junio de 2009, el apelante presentó moción de reconsideración. Luego de referido el caso a la Examinadora nuevamente, ésta recomendó que se declarara No Ha Lugar la misma, toda vez que la pensión había sido impuesta conforme a derecho y no afectaba de ninguna forma la reserva legal del alimentante. El Tribunal acogió dicha recomendación y declaró No Ha Lugar la reconsideración.

Inconforme, el apelante acudió ante nos y señaló los siguientes errores por el Tribunal de Primera Instancia:

"Erró el TPI al no aplicar el Artículo 19 (B) de la Ley Especial de Sustento de Menores, según solicitado.

Erró el TPI al establecer un gasto suplementario de vivienda como parte de la pensión alimentaria.

Erró el TPI al imponer una pensión alimentaria que excede la totalidad de los gastos reportados para los menores.

Erró el TPI al no considerar la prueba documental presentada en violación al debido proceso de ley.

Erró el TPI en el cálculo del retroactivo de pensión alimentaria."

### II

**Pensión alimentaria**

El concepto de alimentos es definido como "todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia," Artículo 142 del Código Civil, 31 L.P.R.A. Sección 561; además de la educación e instrucción, si el alimentista es menor de edad. *Guadalupe Viera v. Morell*, 115 D. P.R. 4, 14 (1983); *López v. Rodríguez*, 121 D.P.R. 23, 28 (1988). La determinación de su cuantía corresponde al prudente arbitrio de los tribunales. Sin embargo, los tribunales deben procurar que haya proporción entre el estado de necesidad del alimentista y la capacidad económica del alimentante, Artículo 146 del Código Civil, 31 L.P.R. A. Sección 565; *Guadalupe Viera v. Morell, supra*, página 14. Reiteradamente, ha establecido el Tribunal Supremo que los casos de alimentos están revestidos del más alto interés público. Véase *Ríos Rosario v. Vidal Ramos*, 134 D.P.R. 3 (1993); *López v. Rodríguez*, 121 D.P.R. 23, 28 (1988). A su vez, la responsabilidad económica de mantener a los hijos es sin duda una parte esencial e integral de las responsabilidades jurídicas de los padres. Dicha responsabilidad económica es indelegable y la misma es una obligación inherente a la patria potestad, que está arraigada en profundas consideraciones de base moral, tales como el amor, auxilio y la solidaridad familiar. Por lo tanto, la responsabilidad económica de mantener a los hijos es considerada como una obligación primordial cuyo cumplimiento debe ser exigido con el mayor rigor, *Soto Cabral v. E.L.A.*, 138 D.P.R. 298 (1995).

Las fuentes de la obligación alimentaria en Puerto Rico son el Código Civil, 31 L.P.R.A. Sección 561 y siguientes, y la Ley Especial para el Sustento de Menores, Ley Número 5 del 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. Sección 501 y siguientes. De ahí, que la obligación que tienen los padres de alimentar a sus hijos sea una obligación primordial y que su cumplimiento se exija con el mayor rigor, *Soto Cabral v. E.L.A., supra.*

Por otro lado, el Reglamento 7135, del 24 de abril de 2006, adoptado al amparo de la Ley Orgánica de la Administración para el Sustento de Menores (ASUME) —el cual contiene las Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico (en adelante, las Guías)—, establece el procedimiento para fijar, modificar o revisar las pensiones alimentarias. La pensión alimentaria incluye la pensión alimentaria básica, que son los gastos mínimos en los que es necesario incurrir para la crianza del alimentista, y la pensión alimentaria suplementaria, que incluye los gastos de educación, vivienda y gastos de salud no cubiertos por un plan de seguro médico.

El Artículo 7 de las mencionadas Guías contiene los pasos a seguir para determinar una pensión alimentaria, a saber: (1) computar la pensión alimentaria básica, a base del ingreso del padre no custodio y las tasas correspondiente al número de alimentistas para los cuales se está determinando la misma; (2) en aquellos casos en que el alimentista pase más del 20% del tiempo con el padre no custodio, calcular el ajuste correspondiente de la pensión alimentaria básica; (3) computar la pensión alimentaria suplementaria, a base de los gastos suplementarios existentes; y (4) luego de calcular la pensión total a pagarse, compararla con el ingreso neto del alimentante para verificar que éste cuente con al menos $515.00 mensuales como reserva de ingresos para cubrir sus necesidades básicas.

El Artículo 4 de las Guías define los gastos suplementarios en los siguientes términos:

"Gastos que tanto la persona no custodia como la persona custodia deben sufragar para satisfacer las necesidades del/la alimentista que no se contemplan en la pensión alimentaria básica. Incluye gastos de educación, vivienda, y gastos de salud no cubiertos por un plan de seguro médico. También incluye los gastos por concepto de cuido de niños/as, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio. Al momento de determinar los gastos suplementarios, el/la juzgador/a deberá considerar no sólo los gastos que efectivamente se pagaron, sino también aquellos que deberían sufragarse para satisfacer todas las necesidades del/la alimentista." (Énfasis suplido).

Por su parte, el Artículo 7(C) dispone específicamente el procedimiento para computar una pensión alimentaria suplementaria, el cual citamos a continuación:

"1. En todos los casos en los que existan gastos suplementarios, se determinará una pensión alimentaria suplementaria.

2. La pensión alimentaria suplementaria se establecerá tomando en consideración la responsabilidad que la persona custodia y la no custodia tienen con relación a los gastos suplementarios del/la alimentista a quien se le determinará la pensión alimentaria. El cálculo para determinar la pensión alimentaria suplementaria dependerá de la participación de la persona custodia y no custodia en el ingreso neto total de ambas.

3. Para calcular la referida participación:

a) Se suma el ingreso neto de la persona custodia, el de la no custodia y, cuando ello aplique, el ingreso neto de sus respectivos cónyuges, para obtener el ingreso neto total.

b) Se divide el ingreso neto de la persona custodia y el de la no custodia entre el ingreso neto total de ambas.

El resultado obtenido para la persona custodia y la no custodia representa la proporción en la que cada una de ellas deberá responder por la totalidad de los gastos suplementarios.

c) Se suman las partidas de gastos suplementarios que correspondan en cada caso.

d) El resultado obtenido se multiplica por la proporción determinada anteriormente para la persona custodia y la no custodia.

El producto de la referida multiplicación corresponde a la parte por la que la persona custodia y no custodia deberán responder por concepto de los gastos suplementarios.

e) La cantidad determinada se suma a la pensión alimentaria básica establecida a la persona no custodia y el resultado será la pensión alimentaria que ésta deberá pagar para beneficio de los/as alimentistas.

4. Los renglones de gastos a considerarse en la pensión suplementaria son los siguientes:

a) Gastos por cuido de niños/as: El gasto mensual por cuido del/la alimentista se considerará un gasto suplementario cuando sea necesario para que la persona custodia desempeñe un empleo o pueda estudiar.

El costo del cuido que provea una institución educativa luego de culminar el horario regular de clases, y el gasto por concepto de campamento se considerarán gastos por cuido de niños/as.

El gasto por cuido del/la alimentista deberá responder al criterio de razonabilidad, el cual se determinará tomando en consideración el horario de trabajo o estudio de la persona custodia, el lugar donde se presta el servicio de cuido, el número de alimentistas que recibe el mismo, y las circunstancias particulares, si alguna, de la persona custodia.

b) Gastos por concepto de educación, educación vocacional o preescolar: Bajo este renglón se tomará en consideración el pago de la matrícula anual, el pago de las mensualidades del colegio, el pago por concepto de estudios supervisados, tutorías, así como los gastos anuales en los que se incurra para la compra de uniformes, textos escolares o universitarios, efectos escolares y cualquier gasto relacionado con la educación del/la alimentista. También se tomará en consideración el pago de un hospedaje en los casos de estudiantes

universitarios que necesiten sufragar este gasto para poder estudiar. Con relación a la mensualidad del colegio, la misma se multiplicará por diez (10) meses, que corresponden a los meses del calendario lectivo, y el resultado se suma a la cantidad que anualmente se paga por concepto de matrícula, textos escolares o universitarios, libros, uniformes, efectos escolares, hospedaje y otros gastos relacionados. El producto obtenido se divide entre doce (12) meses para obtener el gasto mensual por este concepto.

En aquellos casos en los que el/la alimentista asista a una escuela pública, se tomará en consideración los gastos anuales en los que se incurra para la compra de uniformes, efectos escolares y otros gastos relacionados. La cantidad a la que asciendan los mismos, se divide entre 12 (doce) meses para obtener el gasto mensual por este concepto.

No obstante lo dispuesto en los dos párrafos anteriores, se podrá prorratear el pago de matrícula, textos escolares o universitarios, materiales y uniformes en dos (2) pagos al año que coincidan con el inicio de cada semestre escolar.

El gasto por concepto de educación deberá responder al criterio de razonabilidad, por lo que el/la juzgador/a deberá tomar en consideración la situación económica de la persona custodia y la no custodia, las circunstancias del/la alimentista y el estilo de vida familiar.

c) Gastos de salud no cubiertos: Se refiere a cualquier gasto por concepto de salud que redunde en beneficio del/la alimentista, que no esté cubierto por su seguro médico. Ejemplos de éstos, son: gastos por concepto de salud visual, dental, emocional, gastos de rehabilitación vocacional, gastos de ortopedia y deducibles recurrentes, entre otros.

d) Renta mensual: Se toma en consideración la cantidad pagada por concepto de renta o hipoteca de la vivienda en la cual residen los/las alimentistas, y se divide por el número de personas que residen en la referida vivienda. De este modo, se obtiene una cantidad *per capita*, que se multiplica por el número de alimentistas para los/las cuales se está determinando la pensión alimentaria. El resultado será la cuantía por la cual la persona custodia y la no custodia deberán responder proporcionalmente.

El concepto de renta o hipoteca incluye las cuotas de mantenimiento, pero excluye los gastos relacionados a utilidades y al mantenimiento rutinario al uso y disfrute de la misma.

En los casos en los que la persona custodia se mude a una nueva residencia por la cual deba pagar una renta o hipoteca mensual sustancialmente mayor a la renta o hipoteca que mensualmente pagaba por la residencia anterior; el/la juzgador/a, establecerá una cantidad razonable por concepto de gastos de renta mensual para cada uno/a de los/las alimentistas.

Para el análisis de razonabilidad, se tomará en consideración la cantidad que anteriormente se pagaba por concepto de renta o hipoteca, y la cantidad que por este concepto pagará la persona custodia en el nuevo hogar al cual se mudó con los/las alimentistas; la cantidad *per capita* que le correspondía al/la alimentista y la que le corresponderá a éste/a luego del cambio de residencia, las circunstancias particulares de la persona custodia, y la del/la alimentista. (Énfasis suplido).

Asimismo, las Guías definen el concepto de modificación como el "[p]rocedimiento para variar una orden de pensión alimentaria que el/la juzgador/a iniciará, a su discreción o a solicitud de parte, en cualquier momento y fuera del ciclo de tres (3) años, cuando ocurra un cambio sustancial en las circunstancias del/la alimentista o en las de la persona custodia o no custodia, según lo establecido en el Artículo 19 de la Ley".

A pesar de que la Ley sobre Menores establece que para fijar el monto de la pensión alimentaria deberán

utilizarse las guías mandatorias adoptadas para ello, el mismo cuerpo legal dispone que si la aplicación de éstas resulta en un pensión injusta o inadecuada, el Tribunal o el Administrador determinará la pensión alimentaria considerando algunos factores. Específicamente, el Artículo 19 (b) de la Ley dispone lo siguiente:

b) En todo caso en que se solicite la fijación o modificación, o que se logre un acuerdo o estipulación de una pensión alimentaria, será mandatario que el tribunal o el Administrador, según sea el caso, determine el monto de la misma utilizando para ello las guías adoptadas a tenor con lo dispuesto en esta sección. Si el tribunal o el Administrador, según sea el caso, determinara que la aplicación de las guías resultara en una pensión alimentaria injusta o inadecuada, así lo hará constar en la resolución o sentencia que emita y determinará la pensión alimentaria luego de considerar, entre otros, los siguientes factores: (1) los recursos económicos de los padres y del menor; (2) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales; (3) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta; (4) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente; y (5) las contribuciones no monetarias de cada padre al cuidado y bienestar del menor.

Para la determinación de los recursos económicos del obligado a pagar una pensión alimenticia, se tomará en consideración, en adición al ingreso neto ordinario, el capital o patrimonio total del alimentante...

.........

Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en que se presentó la petición de alimentos en el tribunal, y en los casos administrativos desde que se diligenció al alimentante la notificación sobre solicitud de proveer alimentos."

8 L.P.R.A. sec. 518 (b)

## Apreciación de la Prueba

Por último, es norma fundamental de nuestro ordenamiento jurídico que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. *Arguello v. Arguello*, 155 D.P.R. 62, 71 (2001); *Trinidad v. Chade*, 153 D.P.R. 280 (2001). Sabido es que "un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia." *Rolón v. Charlie Car Rental, Inc.,* 148 D.P.R. 420, 433 (1999). En fin, las determinaciones de credibilidad que hace el tribunal sentenciador merecen gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue quien oyó y vio declarar a los testigos. *E.L.A. v. P.M.C.,* 163 D.P.R. 478 (2004).

### III

Alega el apelante en su primer señalamiento que erró el TPI al no aplicar el Artículo 19 (B) de la Ley de Sustento de Menores, según solicitado.

Según dicho Artículo, el Tribunal o el Administrador no aplicarán las Guías mandatorias, y sí otros factores allí enumerados, cuando consideren que la aplicación de éstas es injusta e inadecuada. Una revisión del expediente ante nos, incluida la evidencia de ingresos de las partes, nos obliga a concluir que en el caso ante nos, la aplicación de las guías no resulta en una pensión inadecuada o injusta. La Guías establecen que luego de calcular la pensión total a pagarse, se debe comparar con el ingreso neto del alimentante para verificar que éste cuente con al menos $515.00 mensuales como reserva de ingresos para cubrir sus necesidades básicas. No encontramos error en el cálculo que realizó la Examinadora en su informe al concluir que en el caso ante nos, el ingreso neto del alimentante es de $4,112.00 y que restándole la pensión impuesta de $1,423.00 y aun

considerando la pensión fijada al apelante para otra menor ($1,385), tiene un sobrante de $1,385.00 mensual. Ello nos obliga a concluir que en este caso, la fijación de la pensión alimentaria conforme a las guías mandatorias es adecuada y justa. El primer error no fue cometido.

En su segundo señalamiento, alega el apelante que erró el TPI al establecer un gasto suplementario de vivienda como parte de la pensión. La ley es clara al establecer el deber de todo alimentante de suplir las necesidades de alimentos, vivienda y educación a sus hijos menores, en proporción con su capacidad económica. Para ello, la ley establece, además de la pensión básica, la pensión suplementaria que viene a suplir esas necesidades de vivienda, educación y gastos extraordinarios de los menores. En el caso ante nos, la pensión suplementaria, fue calculada considerando el gasto mensual por la educación de los menores en la proporción correspondiente al alimentante, y así mismo el gasto por vivienda considerando el pago de hipoteca anterior correspondiente, esto es $228.17 por la educación (el 66% de un total de $344.50 de gastos que incluyen matrícula, mensualidad y libros escolares), y $230.49 por el gasto de vivienda (66% de un total de $348.00 correspondiente al pago de hipoteca por vivienda de los dos menores). Dicha información es sostenida por el expediente.

Una de las contenciones del apelante es que la apelada no reside en la vivienda alegada, en vista de que la factura de luz y agua refleja un gasto mínimo. Dicha alegación no nos convence de alterar el criterio del juzgador de instancia al otorgar credibilidad a la apelada en su testimonio de que reside en la propiedad con sus hijos.

En lo concerniente al tercer error, vemos que tanto el cálculo de la pensión alimentaria básica como el cálculo de la pensión alimentaria suplementaria (que sólo incluye gastos escolares y gastos de vivienda), están correctamente realizados y fundamentados en la evidencia presentada por las partes y no exceden los gastos reportados de los menores como alega el apelante en su tercer señalamiento de error.

En su cuarto señalamiento alega el apelante que erró el TPI al no considerar la prueba documental presentada en violación al debido proceso de ley. Conforme surge del expediente ante nos, la evidencia presentada por el apelante sí fue considerada y aquilatada sin pasión o prejuicio por el foro de instancia y así surge del informe de la Examinadora acogido por el Tribunal. Conforme a lo antes expuesto, las determinaciones emitidas por el foro de instancia se sostienen por el expediente y hacen innecesaria una mayor discusión de este señalamiento de error.

Como último señalamiento, alega el apelante que erró el TPI en el cálculo del retroactivo de pensión alimentaria. La ley es clara al establecer que los pagos por concepto de pensiones y de aumentos en las mismas serán efectivos desde la fecha en que se presentó la petición de alimentos en el tribunal. La petición de revisión en este caso fue presentada por la apelada 13 de septiembre de 2007. Si la pensión establecida por el Tribunal desde el divorcio de las partes para los menores era de $700.00. y la nueva pensión fijada conforme a derecho en el año 2009 es de $1,423.00 es obvio que existe una cuantía por retroactivo de pensión que debe ser satisfecha.

Alegó el apelante que no se dedujo del cálculo del retroactivo los gastos médicos mensuales que reembolsaba a la apelante, así como el pago de los $700.00 adicionales que pagaba en diciembre. Arguyó, además, que el tribunal debe considerar la totalidad de los referidos pagos y que debe hacer el ajuste correspondiente, conforme a la prueba que se presente en ese respecto. El apelado no nos pone en posición de atender este señalamiento. Según las determinaciones de la Examinadora, el pago de retroactivo asciende a $8,892.00, considerando la fecha en que se presentó la solicitud de revisión, y se ofreció un plan de pago de $577.00 mensual. El apelante no presentó prueba ante el foro de instancia sobre estas nuevas alegaciones, dichos planteamiento no pueden ser traído ante la consideración del foro apelativo por primera vez, menos aún puede el apelante pretender que se celebre una nueva vista para pasar prueba al respecto. No estamos en posición de alterar las determinaciones del foro de instancia, toda vez que son carentes de error, prejuicio o parcialidad. La pensión impuesta es conforme a derecho, justa y adecuada y no viola el derecho de reserva legal de ingresos del alimentante.

## IV

Por lo antes expresado se confirma la resolución emitida el 1ro de junio de 2009 por el Tribunal de Primera Instancia.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones