ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| JUSTINA SÁNCHEZ CRUZ<br><br>Demandante Recurrida<br><br>V.<br><br>CARLOS ARTURO MORALES PÉREZ<br><br>Demandado Peticionario | KLCE202401079 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Caguas<br><br>Caso Núm.<br>E CU2020-0005<br><br>Sala: 503<br><br>Sobre:<br><br>Patria Potestad |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Rivera Pérez, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de octubre de 2024.

Comparece el Sr. Carlos Arturo Morales Pérez (en adelante, Sr. Morales Pérez o parte peticionaria) y nos solicita que revisemos la *Resolución* emitida el 12 de agosto de 2024 y notificada el 4 de septiembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "TPI" o foro primario). Mediante el referido dictamen, el TPI acogió el *Informe* rendido el 6 de agosto de 2024 por la Examinadora de Pensiones Alimentarias (en adelante, "EPA")[1] y declaró No Ha Lugar la *Moción Solicitando Reconsideración y Orden* presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *certiorari*.

## I.

El 10 de enero de 2024, el foro primario dictó *Resolución de Alimentos*, la cual fue notificada el 29 de enero de 2024, en la cual

---

[1] Ello de conformidad al Artículo 18, inciso 5, de la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como la *"Ley Orgánica de la Administración para el Sustento de Menores"*, 8 LPRA sec. _____.

se le fijó a la parte aquí peticionaria el pago de una pensión alimentaria por la cantidad de $868.59 mensuales para beneficio de su hija menor de edad.

El 6 de marzo de 2024, el Sr. Morales Pérez presentó ante el TPI una *Moción Urgente Solicitando Rebaja de Pensión Alimentaria por Perdida de Empleo*, mediante la cual alegó que era empleado de la empresa LUMA Energy, y que fue cesanteado de su empleo el 31 de enero de 2024.[2] Además, arguyó que debido a que se había quedado desempleado, no contaba con los recursos económicos para cumplir con el pago de la pensión alimentaria fijada y solicitó al tribunal que refiriera el caso a la EPA y señalará vista urgente de rebaja de pensión alimentaria.[3]

Al día siguiente, la Sra. Justina Sánchez Cruz (en adelante, Sra. Sánchez Cruz o parte recurrida) presentó una *Oposición a Rebaja de pensión Alimentaria y Solicitud de Orden*.[4] En su escrito, se opuso a la solicitud de rebaja de pensión alimentaria presentada por la parte peticionaria arguyendo que la aludida carta de cesantía no menciona las razones del despido del Sr. Morales Pérez, sino meramente que ya no trabaja para LUMA Energy. Además, alegó que, a solo dos (2) meses de haberse impuesto la pensión alimentaria, solicitar una solicitud de rebaja o modificación de pensión alimentaria era la excepción a la norma de revisiones de pensiones alimentarias.[5] Por último, la parte recurrida solicitó orden dirigida a LUMA Energy para que certificara las razones por las cuales el Sr. Morales Pérez ya no trabajaba para dicha compañía, la cual no fue expedida.[6]

---

[2] Apéndice *Certiorari Civil*, Anejo 1. A dicha moción fue anejada la carta de cesantía.
[3] *Id.*
[4] Apéndice *Certiorari Civil*, Anejo 3.
[5] *Id.*
[6] *Id.*

Así las cosas, el 11 de marzo de 2024, notificado el día siguiente, el tribunal refirió al EPA ambas mociones presentadas.[7] En atención a dicho referido, la EPA dictó *Orden* el 15 de marzo de 2024, notificada el 18 de marzo de 2024, mediante la cual citó para el 3 de abril de 2024, a la 1:30 p.m.,[8] a las partes para una vista sobre rebaja de pensión alimentaria. Además, les concedió cinco (5) días para presentar las correspondientes Planillas de Información Personal (en adelante, "PIPE").[9]

Al día siguiente de celebrada la vista en sus méritos sobre solicitud de rebaja de pensión, pautada para el 3 de abril de 2024, y en la cual las partes tuvieron la oportunidad de presentar prueba a favor de sus respectivas posturas, la parte peticionaria presentó una *Moción Urgente en Solicitud de Orden Patronal.* En síntesis, alegó que la determinación de la EPA de declarar "No Ha Lugar" la rebaja de pensión alegadamente se basó en que la certificación presentada en la vista no expresaba las razones por la cuales el Sr. Morales Pérez ya no laboraba para LUMA Energy.[10] Además, insistió en que se expidiera la orden solicitada debido a que había solicitado previamente dicha orden al tribunal y no había sido contestada y por el patrono haberse negado a expresar por escrito la razón de su despido.[11]

El 8 de abril de 2024, notificada al día siguiente, el TPI expidió la orden solicitada.[12] Ante esta situación, la Sra. Sánchez Cruz mediante *Urgente Moción en Solicitud de Orden, Sobre Celebración de Vista de Revisión e Informe de la EPA*, fechada 18 de abril de 2024, objetó la orden expedida por el tribunal. En su moción, expresó que, previo a la vista del 3 de abril de 2024, el foro primario no había

---

[7] Apéndice *Certiorari Civil*, Anejo 4.
[8] Esta vista se celebró de manera virtual debido a que la parte recurrida reside en los Estados Unidos.
[9] Apéndice *Certiorari Civil*, Anejo 5.
[10] Apéndice *Certiorari Civil*, Anejo 8.
[11] *Id.*
[12] Apéndice *Certiorari Civil*, Anejo 9.

expedido la orden a pesar de reiterarse la solicitud, que el peticionario "se cruzó de brazos y, a pesar de que tuvo más de un mes para solicitar todas las órdenes, prueba y traer a cuantos testigos entendiese para probar su causa de acción, nada hizo", que "radicó un escrito solicitando -tardíamente- la prueba que debió haber presentado el día antes, entiéndase, el día de la vista en sus méritos", que "solicitó por vez primera la prueba para subsanar el hecho fundamental de que no pudo probar el día antes que había sido despedido de su empleo por causa no atribuible a su persona", y que "el escrito presentado por el Sr. Morales no establece justa causa para la solicitud tardía y con la que pretende obtener la prueba que le era disponible y que venía obligado a obtener PREVIO a la vista, no luego".[13]  Por último, alegó que, a pesar de que se le sugirió a la parte peticionaria que se transfiriera la vista, este no se allanó.[14]

El 22 de abril de 2024, enmendado el 14 de mayo de 2024, la EPA presentó ante la consideración del TPI un *Informe de la Examinadora de Pensión Alimentaria*.[15]  Del mismo, surge lo siguiente:

> "[…]
> Conforme a la Orden emitida por esta Examinadora, las partes debían comparecer preparadas para argumentar sus respectivas posiciones sobre la solicitud de rebaja de pensión.  Además, recaía sobre el Sr. Morales el peso de la prueba.
> Luego de tomarle juramento a las partes, el Sr. Morales manifestó que se reunieron con él y le indicaron que estaba despedido. Alegó que le indicaron que la ley no los obligaba a entregarle una carta de despido ni indicar las razones para [sic.] desprenderlo de sus funciones. Como evidencia, proveyó una certificación que solo indica que el Sr. Morales ya no era parte de LUMA. Expresó que realizó una solicitud de desempleo que aún no había sido aprobada porque tenía un punto controvertible. Indicó que realizó gestiones con la Unión, pero le indicaron que no podían ayudarlo.
> A pesar de que el Sr, Morales manifestó que había realizado una reclamación a la Unión y posteriormente

---

[13] *Id.*
[14] *Id.*
[15] Apéndice *Certiorari Civil*, Anejo 7.

una reconsideración indicó, a preguntas de esta Examinadora, no poseer ningún documento acreditativo de tales gestiones. Manifestó que ambos procedimientos los hizo de forma verbal. De igual forma expresó que la Unión no le entregó nada por escrito, sino que fue un intercambio verbal.

[...]

En este caso, el Sr. Morales no le demostró al Tribunal que la pérdida de empleo no fue provocada por sí mismo. Conforme, a la evidencia presentada por el Sr. Morales, así como su testimonio, esta Examinadora no le confiere credibilidad y, por tanto, entendemos que no procede la revisión de la pensión alimentaria. **Recomendamos que se declare No Ha Lugar la solicitud de revisión presentada por la parte demandada.”** (Énfasis en el original.)

El 20 de mayo de 2024, el TPI emitió una *Resolución* adoptando las recomendaciones del *Informe de la Examinadora de Pensión Alimentaria*, en virtud del Artículo 18, inciso 5, de la Ley Núm. 5 de 30 de diciembre de 1986, *supra*, y declaró No Ha Lugar la *Moción Urgente Solicitando Rebaja de Pensión Alimentaria por Perdida de Empleo* presentada el 6 de marzo de 2024[16] por el Sr. Morales Pérez.[17] Ese mismo día, el foro primario mediante una *Orden*, mediante la cual dejó sin efecto la orden dirigida al patrono LUMA Energy.[18]

Inconforme con dichas determinaciones, el 4 de junio de 202, la parte peticionaria presentó una *Moción Solicitando Reconsideración de Resolución y Orden*.[19] En su escrito, el Sr. Morales Pérez alegó que, con posterioridad a la celebración de la vista de rebaja de pensión alimentaria, recibió la determinación del Departamento del Trabajo, División de Seguro por Desempleo, la cual anejó a su moción. Según alegó, en esta se determinó, en síntesis, que había sido despedido sin existir razón aparente para su despido y que no incurrió en conducta incorrecta, ya que su patrono anterior no ofreció información que explicara de manera

---

[16] La fecha de la moción en solicitud de rebaja de pensión indicada en la resolución está errónea no es del 26 de marzo de 2024, sino del 6 de marzo de 2024.

[17] Apéndice *Certiorari Civil*, Anejo 7.

[18] Apéndice *Certiorari Civil*, Anejo 13.

[19] Apéndice *Certiorari Civil*, Anejo 14.

satisfactoria las causas para el despido y lo declaró elegible para recibir los beneficios.[20]

Este asunto, el 24 de junio de 2024, fue referido ante la atención de la EPA.[21] Luego del correspondiente trámite, 28 de junio de 2024, la parte aquí recurrida presentó su *Oposición a Reconsideración.*[22] En síntesis, alegó que el peticionario, durante la vista celebrada, había tenido la oportunidad de probar su caso y no lo hizo y que la determinación del tribunal de denegar la solicitud de rebaja de pensión no estuvo basada únicamente en la falta del documento del Departamento del Trabajo, sino también en la totalidad de la prueba presentada, incluyendo el testimonio del Sr. Morales Pérez. El 6 de agosto de 2024, la EPA emitió su informe respecto a la reconsideración solicitada.[23]

Finalmente, el 12 de agosto de 2024, notificada el 4 de septiembre de 2024, el TPI dictó *Resolución* declarando No Ha Lugar la *Moción Solicitando Reconsideración de Resolución y Orden* presentada por la parte peticionaria.[24]

Aun inconforme, la parte aquí peticionaria acudió ante nosotros el 4 de octubre de 2024 mediante el presente recurso de *Certiorari Civil.* En su escrito, alega que el foro primario cometió los errores siguientes:

> A- Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar la Moción Solicitando Reconsideración y Orden de la Resolución dictada el 20 de mayo de 2024, sobre Reconsideración presentada por el demandado el 4 de junio de 2024, identificada erróneamente en la Resolución que la misma fue presentada el 28 de junio de 2024, basada dicha determinación exclusivamente en el Informe rendido por la Examinadora de Pensiones Alimentaria el 6 de agosto de 2024 en el que se aplicó la doctrina de cosa juzgada a la solicitud de revisión de pensión alimentaria presentada por el demandado, sin considerar la Determinación emitida por el Departamento del Trabajo en la que se concluyó que

---

[20] *Id.*
[21] Apéndice *Certiorari Civil,* Anejo 15.
[22] Apéndice *Certiorari Civil,* Anejo 17.
[23] Apéndice *Certiorari Civil,* Anejo 19.
[24] *Id.*

el despido del demandado fue sin existir una razón aparente, ya que el patrono no ofreció información que explicara la manera satisfactoria las causas para el despido.

B- Erró el Honorable Tribunal de Primera Instancia al dictar una Orden el 20 de mayo de 2024 mediante la cual dejó sin efecto la Orden al patrono expedida a solicitud del demandado el 8 de abril de 2024, la cual ya había sido diligenciada y estaba dirigida a que el patrono expresara las razones del despido del demandado, acción del Tribunal que tuvo el efecto de privar al demandado de su derecho a conocer la razón de su despido y obtener la evidencia escrita necesaria para demostrar que su despido fue injustificado.

C- Erró el Honorable Tribunal de Primera Instancia al dictar Orden el 20 de mayo de 2024 dejando sin efecto la Orden al patrono expedida el 8 de abril de 2024, a más de 30 días de haber sido expedida y a raíz de la moción presentada por la parte demandante fechada el 18 de abril de 2024, la cual fundamentó en argumentos relacionados con la doctrina de cosa juzgada, la cual no es de aplicación en los casos de alimentos.

D- Erró el Honorable Tribunal de Primera Instancia al no reinstalar la Orden dictada dirigida al patrono del demandado, que fue dejada sin efecto a solicitud de la demandante, habiendo sido demostrado al Tribunal en la Moción de Reconsideración presentada por el demandado el 4 de junio de 2024, que el abogado de la demandante cursó comunicación a la abogada del demandado, solicitando se le enviara la contestación de la orden una vez el patrono contestara la misma, actuación que va en contra del principio de derecho de que a nadie le está permitido ir conta sus propios actos.

Luego del correspondiente trámite, el 21 de octubre de 2024, la parte recurrida presentó ante nos su *Alegato en Oposición a Expedición de Certiorari*.

Así, contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El Artículo 4.006 de la Ley Núm. 201-2003, según enmendada, *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*, 4 LPRA sec. 24y, establece que el Tribunal de Apelaciones conocerá, "[m]ediante auto de *certiorari* expedido a su

discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia." El *certiorari* ha sido definido por el Tribunal Supremo como "un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido." *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491.

La expedición de un recurso de *certiorari* para revisar órdenes y resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia está limitada por la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Esta Regla establece que el recurso de *certiorari* "solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injunction*] o de la denegatoria de una moción de carácter dispositivo." *Íd.* Por excepción a lo dispuesto anteriormente, la Regla 52.1 de Procedimiento Civil, *supra*, también autoriza la revisión mediante *certiorari* de órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre los asuntos siguientes: la admisibilidad de testigos de hechos o peritos esenciales; asuntos relativos a privilegios evidenciarios; anotaciones de rebeldía; en casos de relaciones de familia; en casos que revistan interés público, o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.[25] *Íd.* De esta forma, se reconoce, según explica el Profesor Hernández Colón, "que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos

---

[25] Estas disposiciones fueron incorporadas a la Regla 52.1 de Procedimiento Civil de 2009, *supra*, mediante la Ley Núm. 220-2009 y la Ley Núm. 177-2010.

para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata." R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 533.

Conforme establece la Regla 52.1 de Procedimiento Civil, *supra*, "[c]ualquier otra resolución u orden interlocutoria dictada por el Tribunal de Primera Instancia podrá ser revisada mediante el recurso de apelación que se presente contra la sentencia final dictada por el Tribunal de Primera Instancia, sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales."

Resulta necesario destacar que "[l]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209, citando a *IG Builders et al. v. BBVAPR*, supra, pág. 338. En el ámbito judicial, el concepto discreción ha sido definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera." *IG Builders et al. v. BBVAPR*, supra, pág. 338; *García v. Padró*, 165 DPR 324, 334-335 (2005); *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

El Tribunal Supremo ha señalado que la discreción del Tribunal de Apelaciones para expedir un auto de *certiorari* no debe ejercerse de manera aislada en abstracción del resto del Derecho. *Íd*. En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, enmarca los criterios que el Tribunal de Apelaciones deberá tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Esta Regla dispone lo siguiente:

> "El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

Lo anterior implica que la determinación de expedición del auto de *certiorari* deber ser evaluada en el contexto de todos los derechos aplicables y bajo las pautas específicas que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, proporciona.

**B.**

En nuestra jurisdicción, los casos de derecho a alimentos de menores "están revestidos del más alto interés público, siendo el interés principal el bienestar del menor." *Díaz Rodríguez v. García Neris*, 208 DPR 706, 718 (2022); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012); *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009); *Argüello v. Argüello*, 155 DPR 62, 70 (2001). "Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia." Artículo 653 del Código Civil, 31 LPRA sec. 7531.

La obligación de alimentar al menor es inherente a la maternidad y la paternidad, por lo que recae sobre los obligados

desde el momento en que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar. *Díaz Rodríguez v. García Neris*, supra; *Santiago, Maisonet v. Maisonet Correa*, supra, págs. 560-561. Esta obligación es personal de cada uno de los padres por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor. *Díaz Rodríguez v. García Neris*, supra; *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019).

Reiteradamente el Tribunal Supremo ha resuelto que las sentencias de alimentos no constituyen cosa juzgada y que siempre estarán sujetas a revisión. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 722 (2022); *Pesquera Fuentes v. Colón Molina*, 202 DPR 93 (2022); *Piñero Crespo v. Gordillo Gil*, 122 DPR 246 (1988). Véase, además, *Magee v. Alberro*, 126 DPR 228, 233 (1990). De igual forma, ha sostenido que, una vez la pensión alimentaria ha sido estipulada por las partes, la alteración del referido convenio, antes de transcurridos los tres (3) años, procederá únicamente cuando exista un cambio sustancial en las circunstancias que dieron lugar o que originaron el mismo. *Íd.*; *Negrón Rivera y Bonilla, Ex Parte*, 120 DPR 61, 77 (1987).

Un cambio sustancial es aquél que afecta la capacidad del alimentante para proveer los alimentos o las necesidades de los alimentistas. *Pesquera Fuentes v. Colón Molina*, supra; *Negrón Rivera y Bonilla, Ex Parte*, supra, pág. 78. Dicho de otra forma, es el tipo de cambio que ocurre en las necesidades del alimentista y/o en los recursos del alimentante. *Piñero Crespo v. Gordillo Gil*, supra, pág. 258. La justa causa puede consistir en: (1) variaciones o cambios significativos o imprevistos en los ingresos, la capacidad de generar ingresos, los egresos, los gastos, el capital del alimentante o alimentista, en los gastos, las necesidades o las circunstancias del

menor; o (2) cuando exista cualquier prueba de cambio sustancial en las circunstancias. *Íd.*

La Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como la *"Ley Orgánica de la Administración para el Sustento de Menores"*, 8 LPRA sec., 501 *et seq.*, consagra la doctrina de los cambios sustanciales en las circunstancias del alimentante o alimentista como requisito previo a la radicación y tramitación de una solicitud de modificación de una pensión alimentaria vigente, cuando no han transcurrido los tres (3) años dispuestos por Ley. *McConnell v. Palau*, 161 DPR 734, 748 (2004), citando a S. Torres Peralta, *La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico*, Edición Especial, San Juan, Puerto Rico, 1997, Publicaciones STP, a la sec. 2.43.

En cuanto a la revisión de la orden sobre pensión alimenticia, el Artículo 19 (c) de la Ley Núm. 5 de 30 de diciembre de 1986, *supra*, dispone lo siguiente:

> "[T]oda orden de pensión alimentaria podrá ser revisada y, de proceder, modificada cada tres (3) años desde la fecha en la que la orden de pensión alimentaria fue emitida o modificada, cuando el alimentista, la persona custodia o la persona no custodia presente una solicitud de revisión o cuando la Administración por iniciativa propia o cualquier otra agencia Título IV-D cuando exista una cesión del derecho de alimentos inicie un procedimiento de revisión de pensión alimentaria que pudiera culminar con la modificación de la orden de pensión alimentaria. También se dispone que cualquiera de las partes podrá solicitar o el Administrador por iniciativa propia iniciar, el procedimiento de revisión, y de proceder, de modificación de una orden de pensión alimentaria en cualquier momento fuera del ciclo de tres (3) años, cuando existan cambios sustanciales en las circunstancias del alimentista, de la persona custodia o de la persona no custodia tales como variaciones o cambios significativos o imprevistos en los ingresos, en la capacidad de generar ingresos, en los egresos, gastos o capital de la persona custodia o de la persona no custodia, o en los gastos, necesidades o circunstancias del menor. No obstante, cualquier ley o disposición en contrario, el requisito de cambio significativo o imprevisto en las circunstancias de alguna de las partes se cumple si de la aplicación de las Guías para computar las pensiones alimentarias en Puerto Rico, adoptadas según se dispone en esta Ley, resulta una

pensión alimentaria diferente a la pensión corriente en vigor. La necesidad de proveer sustento médico para un o una menor alimentista en una orden también dará base para la revisión y posible modificación de la pensión alimentaria.

[…].”

Un análisis de la antes mencionada disposición estatutaria revela las circunstancias que pueden constituir cambios sustanciales, esto es, que pueden llevar a la modificación de un decreto alimentario antes de que transcurran los tres (3) años. *Pesquera Fuentes v. Colón Molina*, supra. En resumen, estas son: 1) cuando están presentes cambios significativos o imprevistos en las circunstancias de cualquiera de las partes; 2) cuando se desconocía información, por causas no imputables a la parte perjudicada por el decreto; 3) cuando la aplicación de las guías mandatorias resulta en una cantidad diferente a la pensión corriente decretada en la orden o sentencia objeto de solicitud de modificación o 4) cuando existe una situación de salud de un alimentista menor o incapacitado. *McConnell v. Palau*, supra, pág. 749.

En los casos de fijación de pensiones alimentarias el peso de la prueba para establecer la procedencia y la cuantía de una pensión alimentaria le corresponde al alimentista. *Íd.* Lo anterior es cónsono con el principio elemental de evidencia consagrado en la Regla 10 de las de Evidencia, 32 LPRA Ap. IV, R. 10.

Dicho de otra forma, para que proceda declarar con lugar una solicitud de modificación de pensión, cuando aún no han transcurridos los tres (3) años dispuestos en la Ley para el Sustento de Menores, la situación evidenciaria dependerá de si se trata de una solicitud de aumento o de una solicitud de reducción. En el primer caso, el peso de la prueba recae sobre el reclamante del aumento, quien debe demostrar que ha ocurrido un cambio sustancial en las circunstancias que estaban presentes al fijarse la pensión. *Íd.*, págs. 749-750. En el segundo caso, el peso de la prueba

recae sobre el que solicita la rebaja. Regla 10 de Evidencia, *supra*. *Íd*. Véase, *López v. Rodríguez*, 121 DPR 23, 28 (1988); *Negrón Rivera y Bonilla, Ex Parte*, supra.

En casos en los cuales el alimentante alega que no tiene ingresos suficientes o que gana menos que antes, el tribunal debe hacer todo lo posible por verificar que lo alegado por el alimentante no sea un intento por evadir su responsabilidad alimentaria. Al respecto, en *Argüello López v. Argüello García*, 155 DPR 62, 74-75 (2001), el Tribunal Supremo señaló lo siguiente:

> "[E]n los casos en que el alimentante pueda demostrar que sus ingresos han disminuido, los tribunales de instancia, al tomar en cuenta la prueba ante sí, tienen la obligación de distinguir entre las situaciones en que la reducción de ingresos ha ocurrido por razones legítimas y los casos en que la reducción ha sido deliberada o se debe a la falta de diligencia o a la dejadez del alimentante. Lo esencial es que el tribunal verifique que la reducción en los ingresos del alimentante no sea un artificio para éste incumplir con su obligación de alimentar a sus hijos adecuadamente. Tal como lo intimamos en *López v. Rodríguez*, supra, el foro de instancia puede tomar en cuenta el estilo de vida del alimentante, sus propiedades, su profesión y preparación académica, su historial de empleo y de ingresos, su experiencia laboral, su capacidad y aptitud para generar ingresos y otros factores similares para imputarle ingresos al alimentante razonablemente, más allá de lo que éste alegue o intente probar sobre el particular. Con arreglo incluso a la prueba circunstancial que se le someta, el tribunal puede imponer una obligación alimentaria si puede inferir de esa prueba que el alimentante tiene a su alcance medios suficientes para cumplir con dicha obligación. *López v. Rodríguez*, supra, pág. 33.
>
> En la labor de imputarle ingresos al alimentante como se ha señalado en el párrafo anterior, es de particular importancia que se precisen y ponderen los gastos en que incurre el alimentante para mantener su estilo de vida al momento cuando solicita una reducción en la pensión en cuestión. Tales gastos constituyen un elemento decisivo con respecto a la determinación de cuál es la verdadera situación económica del alimentante. Más aun, la ponderación de tales gastos puede llevar al tribunal a decidir que algunos de ellos tienen que ceder ante la obligación prioritaria de alimentar."

**C.**

Es doctrina legal reiterada que la apreciación de la prueba realizada por los foros de primera instancia debe ser objeto de gran deferencia por los tribunales apelativos. *McConell v. Palau,* 161 DPR 734, 750 (2004). Ello implica que un tribunal apelativo debe abstenerse de intervenir con las determinaciones de hechos y la adjudicación de credibilidad que realizó el foro primario, evitando descartarlas, modificarlas o sustituirlas por su criterio, aun cuando en su evaluación particular hubiera emitido un juicio distinto. *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007); *Argüello v. Argüello,* 155 DPR 62, 78 (2001). El fundamento de esta norma, en cuanto a la prueba testifical, yace en que es el foro primario quien de ordinario se encuentra en mejor posición para aquilatarla, ya que es quien ve y oye a los testigos, pudiendo apreciar sus gestos, titubeos, contradicciones, dudas, vacilaciones y, por consiguiente, formar en su conciencia la convicción en cuanto a si dicen o no la verdad. *Suárez Cáceres v. CEE,* 176 DPR 31, 67-68 (2009). En contraste, los foros apelativos solo contamos con récords mudos e inexpresivos. *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Esta norma, sin embargo, no es absoluta, pudiendo un apelante presentar prueba que demuestre que la apreciación realizada por el foro sentenciador no fue correcta o no está refrendada por la prueba presentada y admitida. *Serrano Muñoz v. Auxilio Mutuo, supra,* pág. 741.

Se ha reconocido en nuestro ordenamiento jurídico que, "ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia". *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021). Al respecto, el Tribunal Supremo ha expresado que "la tarea

de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). De esta manera, "la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

Incurre en pasión, prejuicio o parcialidad "aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna". *Dávila Nieves v. Meléndez Marín*, supra, pág. 782. En cuanto al concepto "error manifiesto", el Tribunal Supremo ha expresado que "se incurre en un error manifiesto cuando la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018), citando a *Pueblo v. Irizarry*, 156 DPR 780, 816, (2002). Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020); *Pueblo v. Toro Martínez*, supra, pág. 859. Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. *Gómez Márquez et al. v. El Oriental*, supra.

Por último, se ha señalado que los tribunales de primera instancia gozan de amplio margen de discreción para llevar a cabo los procedimientos que presiden. *Citibank N.A. v. Cordero Badillo*, 200 DPR 724 (2018). Véase, además, *Pueblo v. Santiago Cruz*, 205 DPR 7 (2020). Esa discreción se ha definido como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005); *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). En consecuencia, los tribunales apelativos —salvo contadas excepciones— no debemos intervenir con la forma en que los foros primarios manejen sus casos. Véase, *Citibank et al. v. ACBI et al.*, supra, pág. 736. Véase también, *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006). Por eso, se ha señalado que aquellas determinaciones que un tribunal inferior haga en el sano ejercicio de su discreción, "deben ser respetadas por los foros apelativos, a menos, claro está, que se demuestre arbitrariedad, un craso abuso de discreción, una determinación errónea que cause grave perjuicio a una de las partes, o la necesidad de un cambio de política procesal o sustantiva". *Citibank et al. v. ACBI et al.*, supra; *Ramos Milano v. Wal-Mart*, supra*; Rebollo López v. Gil Bonar*, 148 DPR 673, 678 (1999).

### D.

Es norma trillada de derecho que las partes tienen el deber de observar rigurosamente las disposiciones reglamentarias establecidas para la forma, contenido, presentación y notificación de los escritos ante nos. *Hernández Jiménez et als. v. AEE et al.*, 194 DPR 378, 382-383 (2015). Ello ante la necesidad de colocar a los tribunales apelativos en posición de decidir correctamente los casos, contando con un expediente completo y claro de la controversia que tiene ante sí. *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013).

Nuestro reglamento exige a la parte que impugna la apreciación de la prueba oral no solo informar la necesidad de

presentar la reproducción de ella, sino también el método que utilizará en la etapa apelativa ya sea transcripción, exposición estipulada o narrativa. Esto, pues en caso de no reproducirlos, el foro revisor no estará en posición de revisar el dictamen recurrido ni podrá determinar si la decisión estaba o no apoyada en la evidencia sometida por las partes. *Pueblo v. Valentín Rivera*, 197 DPR 636, 639 (2017); *Hernández v. San Lorenzo Const.*, 153 DPR 405,422 (2011).

**III.**

En síntesis, la parte peticionaria alega en sus cuatro (4) señalamiento de errores que el TPI incidió al declarar No Ha Lugar la solicitud de revisión de pensión alimentaria presentada por la parte peticionaria aplicando la doctrina de cosa juzgada, sin considerar la determinación emitida por el Departamento del Trabajo en la que se concluyó que el despido del demandado fue sin existir una razón aparente, ya que el patrono no ofreció información que explicara de manera satisfactoria las causas para el despido. Además, alegó que erró el foro primario al dejar sin efecto la *Orden* solicitada al antiguo patrono de la parte aquí peticionaria que había sido diligenciada y estaba dirigida a que el patrono expresara las razones de su despido, y que esto le privó de su derecho a conocer la razón de su despido y obtener la evidencia necesaria para demostrar que su despido fue injustificado.

La parte recurrida, en su escrito en oposición, arguye que la parte peticionaria falla en su petición al no poder indicar y probar que medió pasión, perjuicio, parcialidad o error manifiesto de parte de la juzgadora de los hechos y que la nueva evidencia encontrada luego de la vista variaría el asunto de credibilidad y de peso probatorio adjudicado.

Por estar íntimamente relacionados todos los señalamientos de errores, se procederán a discutir en conjunto.

De la evaluación de los señalamientos de errores plasmados en el recurso de *certiorari,* surge que la parte peticionaria está cuestionando la apreciación de la prueba realizada por el foro primario.   Esto se sostiene en la determinación del TPI de la *Resolución* recurrida, en la cual por referencia adopta las determinaciones del *Informe de la Examinadora de Pensiones Alimentaria*, que expresó lo siguiente:

> "[…]
> En este caso, el Sr. Morales no le demostró al Tribunal que la pérdida de empleo no fue provocada por sí mismo. **Conforme, a la evidencia presentada por el Sr. Morales, así como su testimonio, esta Examinadora no le confiere credibilidad y, por tanto, entendemos que no procede la revisión de la pensión alimentaria."** (Énfasis suplido.)

No obstante, la parte peticionaria no informó y solicitó la autorización para la reproducción de la prueba oral, ni informó el método que utilizaría en la etapa apelativa ya sea transcripción, exposición estipulada o narrativa, así como tampoco anejó la regrabación de la vista ante la EPA.   Esto provoca que no estemos en posición de determinar si el TPI erró al apreciar la prueba oral y documental que tuvo ante sí. Por tal motivo, resulta evidente que la reproducción por alguno de los métodos permitidos constituía pieza clave e indispensable para poder corroborar las alegaciones realizadas por la parte peticionaria en su recurso de *certiorari.* Sin embargo, la parte peticionaria no la presentó.

Además, hay que puntualizar que la determinación tomada por el TPI fue basada única y exclusivamente en la prueba que tuvo ante su consideración.   Es importante señalar que fue con posterioridad a la celebración de la vista de rebaja de pensión alimentaria que la parte aquí peticionaria recibió la determinación del Departamento del Trabajo, División de Seguro por Desempleo, que anejó a su *Moción Solicitando Reconsideración de Resolución y Orden.*   El Sr. Morales Pérez pretende que se considere esta

evidencia adicional sin que citara a la vista testigos que hubieran podido ofrecer dicha evidencia o en su defecto sino estaba preparado solicitar la transferencia de la vista.

Por tanto, procede denegar la expedición del auto solicitado.

**IV.**

Por los fundamentos anteriormente expuestos, se deniega la expedición del auto de *Certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones